# IN THE SUPREME COURT OF TEXAS

════════════

No. 10-0886

════════════

IN RE BILLY FREDERICK ALLEN, RELATOR

══════════════════════════════════════════════════

ON PETITION FOR WRIT OF MANDAMUS

══════════════════════════════════════════════════

**Argued January 12, 2012**

JUSTICE WAINWRIGHT delivered the opinion of the Court.

Under the Tim Cole Act (Act or TCA), formerly known as the Texas Wrongful Imprisonment Act, a wrongfully imprisoned person may seek compensation from the state for the period of wrongful imprisonment.[1] TEX. CIV. PRAC. & REM. CODE § 103.001(a). A person is entitled to compensation if the person 1) has served in whole or in part a sentence in prison under the laws of this state, and 2) has been granted habeas relief on a court determination that he is "actually innocent" of the crime for which he was sentenced.[2] TEX. CIV. PRAC. & REM. CODE § 103.001(a)(1), (a)(2)(B). Additionally, the applicant's supporting documentation must clearly indicate on its face that the person is entitled to compensation. TEX. CIV. PRAC. & REM. CODE § 103.051 (b-1). For the

---

[1] The statute's namesake, Timothy Cole, was convicted and sentenced to twenty-five years in prison for aggravated sexual assault. He maintained his innocence, but died of an asthma attack in 1999 while incarcerated. He was exonerated years later by DNA evidence, and in 2010, Governor Rick Perry granted him the state's first posthumous pardon. *See In re Smith*, 333 S.W.3d 582, 583 n.1 (Tex. 2011); Act of May 27, 2009, 81st Leg., R.S., ch. 180, § 1, 2009 Tex. Gen. Laws 523 (naming the Act after Tim Cole).

[2] Relator seeks compensation solely on the basis of 103.001(a)(2)(B). A wrongfully imprisoned person may also seek compensation on other grounds under the TCA, but they are not at issue in this case.

reasons that follow, we hold that Billy Frederick Allen is entitled to compensation under the TCA, and we conditionally grant the petition for writ of mandamus.

Relator Billy Frederick Allen seeks compensation from the state following the Texas Court of Criminal Appeals' grant of habeas relief. *See Ex parte Allen*, Nos. AP-75580, AP-75581, 2009 WL 282739 (Tex. Crim. App. 2009) (not designated for publication). The first requirement of serving time in a Texas prison is not at issue in this original proceeding, as Allen served almost twenty-six years in prison under the laws of this state. On the second requirement, Allen asserts that the Court of Criminal Appeals granted relief on the basis of "actual innocence," and that he, therefore, is eligible for compensation from the state. This is the crux of the dispute: What does the legal term "actual innocence" in the TCA mean?

Allen sought habeas relief from the Court of Criminal Appeals on a *Schlup*-type claim of actual innocence based on alleged constitutional violations and his actual innocence. *See Schlup v. Delo*, 513 U.S. 298 (1995); *Ex Parte Elizondo*, 947 S.W.2d 202 (Tex. Crim. App. 1996). The Court of Criminal Appeals recognizes two types of "actual innocence" claims. The first—a *Herrera* claim—is a substantive claim in which the person asserts a "bare claim of innocence based solely on newly discovered evidence." *Ex parte Franklin,* 72 S.W.3d 671, 675 (Tex. Crim. App. 2002); *see also Elizondo,* 947 S.W.2d at 208. A court finding that a *Herrera* claim has been established means that the applicant has shown "by clear and convincing evidence that, despite the evidence of guilt that supports the conviction, no reasonable juror could have found the applicant guilty in light of the new evidence," and that the claimant should be exonerated. *Ex parte Brown*, 205 S.W.3d 538, 545 (Tex. Crim. App. 2006) (citations omitted).

The other "actual innocence" claim, a *Schlup*-type claim, is a procedural gateway through which a petitioner must pass to have his otherwise barred constitutional claim considered on the merits. *Schlup*, 513 U.S. at 315. A court finding that a *Schlup* claim has been established means that the applicant has shown that the constitutional error at trial probably resulted in the conviction of one who was actually innocent. *Ex parte Spencer*, 337 S.W.3d 869, 878 (Tex. Crim. App. 2011).

Application is made to the Texas Comptroller of Public Accounts, who is authorized to determine eligibility and the amount of monetary compensation owed to the claimant. TEX. CIV. PRAC. & REM. CODE § 103.051(a), (b). After receiving habeas relief from the Court of Criminal Appeals, Allen applied for compensation from the Comptroller. To establish his claim, Allen included in his application verified copies of the Court of Criminal Appeals' opinion, the mandate issued by the Court of Criminal Appeals, a letter written by Charley Valdez of the Texas Department of Criminal Justice verifying the length of incarceration, copies of Allen's birth certificate, a divorce decree, a birth certificate of his child, and a copy of *State v. Young*, 265 S.W.3d 697 (Tex. App.—Austin 2008, pet. denied). The Comptroller denied the claim, asserting that it did not meet the requirements of the TCA. The Comptroller contends that the court order (the Court of Criminal Appeals' opinion) did not establish Allen's actual innocence as required by Section 103.051(b-1). Allen submitted an application to cure to the Comptroller, and the Comptroller again denied his application as not meeting the actual innocence requirement of Section 103.051(b-1). TEX. CIV. PRAC. & REM. CODE § 103.051 (d). Allen submitted the same enclosures with his application to cure, but provided the Comptroller with a letter brief supporting his belief that *Schlup*-type claimants also are eligible for compensation.

3

The Comptroller's duty in determining eligibility is purely ministerial. TEX. CIV. PRAC. & REM. CODE § 103.051(b-1). The Comptroller's denial of a claim is not reviewable by appeal, but a claimant may seek review through a mandamus proceeding. TEX. CIV. PRAC. & REM. CODE § 103.051(e). "The original proceeding must be filed in this Court because only the Supreme Court may issue a writ of mandamus against an officer of the executive department of this state, such as the Comptroller." *In re Smith*, 333 S.W.3d 582, 585 (Tex. 2011) (citing *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 672 (Tex. 1995)); *see* TEX. CONST. art. V, § 3 (a), TEX. GOV'T CODE § 22.002(c). This Court's general authority to issue a writ of mandamus extends to "order or compel the performance of a judicial, ministerial or discretionary act or duty that, by state law, the officer or officers are authorized to perform." *Smith*, 333 S.W.3d at 585 (quoting TEX. GOV'T CODE § 22.002(c)); TEX. CONST. art. V, § 3 (a). Together with the TCA, the Constitution and the Government Code vest this Court with authority over this original mandamus proceeding. *See Smith*, 333 S.W.3d at 585.

We decide 1) whether a grant of habeas relief on a *Schlup*-type claim merits compensation under the TCA as a writ based on a court finding of actual innocence, and if so, 2) whether the Court of Criminal Appeals' decision clearly indicated on its face that the writ was based on a court finding or determination of actual innocence.

## BACKGROUND & PROCEDURAL HISTORY

In 1983, the City of University Park Police Department arrested and charged Allen with the murders of Raven Dannelle Lashbrook and James Perry Sewell. After a jury trial, Allen was convicted of both murders and received 99-year concurrent sentences. Allen appealed, and the court of appeals affirmed the convictions. *Allen v. State*, Nos. 05-83-01297-CR, 05-83-01298-CR

4

(Tex. App.—Dallas 1985, pet. ref'd). The Court of Criminal Appeals denied his petition to review the convictions. *See* TEX. R. APP. P. 69.1.

The writ of habeas corpus is provided by the Texas Constitution and "is the remedy to be used when any person is restrained in his liberty." TEX. CONST. art. I, §12; TEX. CODE CRIM. PROC. art. 11.01. The purpose of a writ of habeas corpus is to obtain a speedy and effective adjudication of a person's right to liberty from unlawful or unconstitutional restraint. *Ex parte Kerr*, 64 S.W.3d 414, 419 (Tex. Crim. App. 2002) (citing *Blackledge v. Allison*, 431 U.S. 63, 71 (1977) ("the very purpose of the writ of habeas corpus [is] to safeguard a person's freedom from detention in violation of constitutional guarantees")).

Over his twenty-five years in prison, Allen filed several writs of habeas corpus challenging the convictions. In May 2004, Allen filed the underlying habeas application pro se with the Court of Criminal Appeals, alleging ineffective assistance of counsel and denial of a fair trial. *Ex parte Allen*, Nos. AP-75580, AP-75581, 2009 WL 282739, at *3 (Tex. Crim. App. 2009) (not designated for publication). In a December 2005 order, the Court of Criminal Appeals recognized that this was the first writ that Allen had filed since its decision in *Ex parte Elizondo*, 947 S.W.2d 202 (Tex. Crim. App. 1996). In *Elizondo,* the Court of Criminal Appeals held for the first time that "claims of actual innocence are cognizable by this Court in a postconviction habeas corpus proceeding where the punishment assessed is death or confinement." *Id.* at 205. The Court of Criminal Appeals then remanded the matter to the trial court, as the trial court had recommended a new trial with one of Allen's previous writs. *Allen*, 2009 WL 282739, at *3. The trial court issued supplemental findings, but "did not make any specific findings regarding the issues in this case." *Id.* The trial court stated that 1) trial counsel had not been ineffective, but that 2) applicant should be granted a new trial

5

because actual innocence claims were now cognizable, and 3) because the evidence of innocence was "so strong that the Court cannot have confidence in the outcome of the trial." *Id.*

Later in 2009, the Court of Criminal Appeals considered Allen's application on the basis of actual innocence, holding that the claims "were not barred by the Texas Code of Criminal Procedure, Article 11.07, Section 4, '[b]ecause Applicant's prior or actual innocence claims were denied at a time when such claims were not cognizable on habeas review.'" *Id.* (citing the December 2005 order). Allen "presented a *Schlup*-type claim of actual innocence as a procedural gateway through which to raise his otherwise barred constitutional claim of ineffective assistance of trial counsel." *Id.* at *1. On February 4, 2009, the Court of Criminal Appeals held "that applicant is entitled to relief" on his *Schlup*-type claim. *Id.* The Court of Criminal Appeals held that "it is not surprising that the habeas court found that the newly discovered evidence 'of innocence [was] so strong that [it could not] have confidence in the outcome of the trial.' We agree." *Id.* at *9. After the Court of Criminal Appeals granted habeas relief, Allen filed an application for compensation with the Comptroller.

## DISCUSSION

This Court is the only court holding original jurisdiction over the matter as the Respondent Comptroller is an executive officer of the state. *Smith*, 333 S.W.3d at 585; *see* TEX. GOV'T CODE § 22.002(c). Although mandamus will not issue to control an officer's legitimate exercise of discretion, it may issue to enforce the performance of a ministerial act. *Smith*, 333 S.W.3d at 585 (citations omitted). In determining eligibility of a claimant for compensation, the Comptroller shall only consider the verified copies of the pardon, court order, motion to dismiss, and affidavit, if applicable. TEX. CIV. PRAC. & REM. CODE § 103.051 (a)(2), (b-1). The Comptroller's eligibility

6

determination is ministerial and mandamus may issue to review the denial of a claim. TEX. CIV. PRAC. & REM. CODE § 103.051 (b-1), (e).

This case turns on construction of the Tim Cole Act. The construction of a statute is a question of law that we review de novo. *Atmos Energy Corp. v. Cities of Allen*, 353 S.W.3d 156, 160 (Tex. 2011) (citation omitted). Our task is to effectuate the Legislature's expressed intent. *Id.*

**1. Whether a *Schlup*-type Claim Merits Compensation Under the TCA**

The first issue presented to this Court is whether habeas relief from a *Schlup*-type claim is a writ based on a court finding of actual innocence. If it is, it merits compensation under the TCA. A claimant is entitled to compensation if relief has been granted "in accordance with a writ of habeas corpus that is based on a court finding or determination that the person is actually innocent of the crime for which the person was sentenced." TEX. CIV. PRAC. & REM. CODE § 103.001(a)(2)(B). The Comptroller asserts that the Legislature never intended persons like Allen, claimants who present *Schlup*-type claims, to be eligible for compensation under the TCA. Instead, the Comptroller argues that only *Herrera*-type claimants are eligible for compensation, as their claims are "bare-innocence" claims of actual innocence.

Whether compensation may be awarded under the TCA depends, in the first instance, on determinations in the criminal courts of the merits of the applicant's conviction. The judgments of the criminal courts are taken as established for our purpose, and we thereafter apply the civil law component of the TCA. We, therefore, first review the relevant criminal law.

"Claims of actual innocence are categorized either as *Herrera*-type claims or *Schlup*-type claims." *Ex parte Franklin*, 72 S.W.3d 671, 675 (Tex. Crim. App. 2002). A *Herrera* claim is a substantive claim in which the person asserts a "bare claim of innocence" based solely on newly

7

discovered evidence. *Brown*, 205 S.W.3d at 544 (citing *Ex parte Tuley*, 109 S.W.3d 388, 390 (Tex. Crim. App. 2002)). A *Herrera* petitioner asserts that newly discovered evidence establishes an applicant's innocence. *See Herrera*, 506 U.S. at 390. The most familiar *Herrera*-type cases are those in which DNA testing leads to exoneration of the applicant.

In addition to *Herrera*, a habeas applicant may raise actual innocence claims that are asserted constitutional violations in his trial but are procedurally barred by Article 11.07 of the Code of Criminal Procedure. Review of subsequent applications for habeas corpus relief are prohibited, as Section 4 of Article 11.07, Texas Code of Criminal Procedure, "restricts habeas applicants to 'one bite of the apple' except in specified circumstances . . . ." *Ex parte Santana*, 227 S.W.3d 700, 703 (Tex. Crim. App. 2007) (quoting *Ex parte Torres*, 943 S.W.2d 469, 473–74 (Tex. Crim. App. 1997); *see also Ex parte Brooks*, 219 S.W.3d 396, 399 (Tex. Crim. App. 2007). The subsequent-application provision "limits an inmate to one application for writ of habeas corpus except in exceptional circumstances." *Brooks*, 219 S.W.3d at 399. Once an applicant files an application challenging the conviction, all subsequent applications regarding the same conviction must meet one of the two conditions set forth in § 4(a)(1) & (2). *Santana,* 227 S.W.3d at 703; TEX. CODE CRIM. PROC. art. 11.07, § 4(a)(1), (2).[3]

This second type of innocence claim—a *Schlup* claim—is one that "'does not by itself provide a basis for relief,' but is intertwined with constitutional error that renders a person's

---

[3] Article 11.07, section 4(a) prohibits review of subsequent applications for a writ of habeas corpus except in limited circumstances. The application must establish one of the following exceptions: 1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or 2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt. TEX. CODE CRIM. PROC. art. 11.07, § 4(a)(1), (2).

conviction constitutionally invalid." *Brown,* 205 S.W.3d at 544–45 (citing *Schlup v. Delo*, 513 U.S. 298, 315 (1995)). Unlike a *Herrera* claim, which is substantive, a *Schlup*-type claim is procedural: it provides a "gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup*, 513 U.S. at 315. Allen pursued a *Schlup*-type claim in the Court of Criminal Appeals. He asserted a constitutional claim for ineffective assistance of counsel, which coupled with a proper defense of his case at trial would probably have concluded in a not guilty verdict.

The Supreme Court defined actual innocence in a *Schlup*-type claim. According to *Schlup v. Delo*, actual innocence:

> does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

513 U.S. 298, 329 (1995). In *Schlup*, "the petitioner raised a claim of actual innocence in an effort to bring himself within 'the narrow class of cases' implicating a fundamental miscarriage of justice as an exception to a showing of cause and prejudice for failure to raise the claim in an earlier writ." *Elizondo*, 947 S.W.2d at 208 (citing *Schlup*, 513 U.S. at 298). Successful *Schlup* claimants are the "extraordinary" cases. *Brooks*, 219 S.W.3d at 400. The Court of Criminal Appeals recognizes that Texas law "allows review of the merits in the exceptional circumstances of a constitutional violation resulting in the conviction of one who is actually innocent of the offense." *Id.* at 401. To grant *Schlup* relief, an applicant must meet the threshold requirement of showing that a constitutional

9

violation led to a miscarriage of justice due to the incarceration of someone who is actually innocent. *Id.*; *see also Ex parte Thompson*, 179 S.W.3d 549, 557 n.19 (Tex. Crim. App. 2005) ("Applicant argues that his 'factual innocence' claim is cognizable under *Schlup v. Delo* . . . . But it is not. Applicant makes no showing that *he* is innocent of capital murder or that the State violated his constitutional rights by trying him before his accomplice, Sammy Butler.").

The two claims require applicants to meet different burdens of proof to obtain habeas relief. Establishing a bare claim of actual innocence, or a *Herrera* claim, is a "Herculean task." *Brown*, 205 S.W.3d at 545. To succeed on a *Herrera* claim, the habeas applicant must "unquestionably establish" his actual innocence, and show "*clear and convincing evidence* that no reasonable juror would have convicted him in light of the new evidence." *Elizondo*, 947 S.W.2d at 209. *Herrera* applicants are "required to meet a higher threshold to obtain relief because, when the trial has been constitutionally error free, the conviction is entitled to the utmost respect." *Ex parte Spencer*, 337 S.W.3d 869, 877–78 (Tex. Crim. App. 2011).

A *Schlup* claimant, on the other hand, need only show that he is "probably" actually innocent, meaning "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Elizondo,* 947 S.W.2d at 209; *see also Schlup*, 513 U.S. at 326–27. The lower standard is justified because the conviction "may not be entitled to the same degree of respect of one, such as Herrera's, that is the product of an error-free trial." *Schlup*, 513 U.S. at 316. To obtain relief on a *Schlup* claim, the claimant must therefore show that the constitutional error at trial probably resulted in the conviction of one who was actually innocent. *Spencer*, 337 S.W.3d at 878.

**a) Compensation for Wrongfully Imprisoned Persons in Texas**

Wrongfully imprisoned persons have not always been entitled to compensation from the state. *In re Smith*, 333 S.W.3d at 585. In 1955, the people adopted a constitutional amendment granting the Legislature power to grant aid and compensation to persons who have served prison sentences for offenses of which they were not guilty, "under such regulations and limitations that the Legislature may deem expedient." TEX. CONST. art. III, § 51-c. Ten years later, the Legislature enacted the first wrongful-imprisonment compensation statute. Act of May 28, 1965, 59th Leg., R.S., ch. 507, 1965 Tex. Gen. Laws 1022, 1022–1024. A person was entitled to compensation if "he is not guilty of the crime for which he was sentenced." *Id.* at 1022. Almost thirty years later, the Supreme Court decided *Herrera v. Collins* and *Schlup v. Delo*. 506 U.S. 390 (1993); 513 U.S. 298 (1995).

Following the Supreme Court's lead, in 1996 the Court of Criminal Appeals recognized in Texas that the "incarceration of an innocent person is as much a violation of the Due Process Clause as is the execution of such a person." *Elizondo*, 947 S.W.2d at 205. The applicant presented the Court of Criminal Appeals with a *Herrera*-type claim, and the Court turned to *Schlup* for guidance and modified the standard to be applied in *Herrera*-type claims. *Id.* at 208–09*; Franklin*, 72 S.W.3d at 677. The Court of Criminal Appeals granted relief based on the *Herrera*-type claim at issue, and confirmed that "claims of actual innocence" include both *Herrera*-type claims and *Schlup*-type claims. *Id.* at 675 (citing *Elizondo*, 947 S.W.2d at 208).

The Legislature amended the TCA following the Supreme Court's decisions in *Herrera* and *Schlup* and after the Court of Criminal Appeals recognized both types of habeas "actual innocence" claims. In 2001, the Legislature changed the language of the Act to compensate a person who has

11

been "granted relief on the basis of actual innocence of the crime for which the person was committed." Act of May 18, 2001, 77th Leg., R.S., ch. 1488, 2001 Tex. Gen. Laws 5280, 5280–5284. No longer did the legislation require "not guilty," but instead adopted the term "actual innocence," used in *Herrera*, *Schlup*, and *Elizondo*.

The TCA does not define the term "actual innocence." Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008); TEX. GOV'T CODE § 311.011 (b). The Comptroller also admits that the Legislature intended the technical meaning of the term "actual innocence" when it changed the TCA in 2001. "Actual innocence" is a legal term of art, which has acquired a technical meaning in the habeas corpus context.[4]

We presume the Legislature is aware of relevant case law when it enacts or modifies statutes. "A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it." *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) (citation omitted). "Language in a statute is presumed to have been selected and used with care, and every word or phrase in a statute is presumed to have been intentionally used with a meaning and a purpose." *State v. K.E.W.*, 315 S.W.3d 16, 21 (Tex. 2010) (citations omitted). The term "actual innocence" has a particular meaning within habeas corpus jurisprudence, in that it is a particular type of claim "that may be raised in a collateral attack on a conviction." *Ex parte Tuley*, 109 S.W.3d at 390; *see also Ex parte Brown*, 205 S.W.3d at 545 ("We have stated that 'any person who has once been finally convicted in a fair trial should not be permitted to wage, and we do not

---

[4] A "term of art" is a word or phrase having a specific, precise meaning in a given specialty, apart from its general meaning in ordinary contexts. BLACK'S LAW DICTIONARY 1610 (9th ed. 2009).

permit him to wage, a collateral attack on that conviction without making an exceedingly persuasive case that he is actually innocent.'") (citing *Elizondo*, 947 S.W.2d at 205).

The Legislature is presumed to have known about both types of "actual innocence" claims in habeas corpus jurisprudence when it modified the Act to change "not guilty" to "actual innocence," since, before the 2001 Amendment, the Supreme Court had decided both *Herrera* (1993) and *Schlup* (1995) and the Court of Criminal Appeals had recognized both types of habeas claims in Texas. *Herrera*, 506 U.S. at 390; *Schlup*, 513 U.S. at 298; *Elizondo*, 947 S.W.2d at 202.

Even more to the point, we need not presume legislative awareness of the changing habeas jurisprudence because in 1999 the Legislature amended the subsequent application provisions in the Code of Criminal Procedure to accommodate *Schlup*-type claims. Act of May 18, 1999, 76th Leg., R.S., ch. 803, 1999 Tex. Gen. Laws 3431, 3431–3436. The Legislature responded to *Schlup* by updating Articles 11.07 and 11.071 of the Habeas Corpus Reform Act to provide exceptions allowing review of subsequent habeas writs if the legal basis for the writ had not existed in federal or state appellate courts previously.[5] TEX. CODE CRIM. PROC. art. 11.07 § 4(a); TEX. CODE CRIM. PROC. art. 11.071 § 5(a)(2); *Ex parte Reed*, 271 S.W.3d 698, 733 (Tex. Crim. App. 2008) (citing *Ex parte Brooks*, 219 S.W.3d at 399). The Court of Criminal Appeals noted that "[b]ecause Article 11.071 Section 5(a)(2) was enacted in response to the Supreme Court's decision in *Schlup*, we conclude that the standards set forth for evaluating a gateway-actual-innocence claim announced by the Supreme Court should guide our consideration of such claims under Section 5(a)(2)." *Ex parte Reed*, 271 S.W.3d at 733. The Court of Criminal Appeals determined that the Legislature amended

---

[5] "Article 11.071 provides the procedure for death-penalty cases. The language in Article 11.071, section 5(a)(2) is identical to that in Article 11.07, section 4(a)." *Brooks*, 219 S.W.3d at 399 n.6.

the Code of Criminal Procedure in recognition of and to provide for consideration of *Schlup*-type habeas claims.

Because the Legislature changed the statutory term "not guilty" to "actual innocence" following federal and state jurisprudence, from both the United States Supreme Court and the Texas Court of Criminal Appeals, and adopted writ provisions in the Code of Criminal Procedure in response to *Schlup*, we conclude the Legislature intended the legal term of art, "actual innocence," to include both *Herrera* and *Schlup* claims in the TCA.

**b) Respondent's Policy Arguments**

The Comptroller argues that, as a matter of policy, the state should only compensate persons who were wrongfully imprisoned and subsequently found not guilty of the crime for which they served time. In other words, she contends the state should only compensate applicants who establish *Herrera*-type actual innocence claims. That is a plausible policy. However, the Legislature has drawn no distinctions between the two types of "actual innocence" claims. The "actual innocence" language of the TCA includes both types of claims and provides no indication that *Schlup*-type claims are precluded.

We acknowledge that there are potential problems in the TCA—such as compensating someone now who later could be retried and found guilty, that may result in compensating someone temporarily who is actually guilty of the crime. The TCA addresses this concern to a degree by terminating compensation payments if the person is convicted of a crime punishable as a felony. TEX. CIV. PRAC. & REM. CODE § 103.154(a) (providing that payments terminate on the date of the subsequent conviction). Still, while unlikely, it is conceivable that the state could compensate someone who is later found guilty of the crime. Just as someone could be imprisoned for a crime

14

he did not commit, the state could erroneously compensate someone who committed the crime for which he was incarcerated. The imperfection of humanity means that the state may make mistakes, but that possibility does not vitiate the government's interest in avoiding injustice. *See Schlup*, 513 U.S. at 324–25.

Here, it appears unlikely that Allen will be retried or found guilty. In granting habeas relief to Allen, the Court of Criminal Appeals also "remand[ed] him to the custody of the Sheriff of Dallas County."[6] 2009 WL 282739, at *9. Since the Court of Criminal Appeals granted habeas relief and Allen filed his application with the Comptroller, the 195th Judicial District Court of Dallas County, in which his case had been tried, dismissed all pending criminal charges against Allen. The District Attorney of Dallas filed a Motion to Dismiss the charges based on the destruction in 2007 of all physical evidence, the death of one fact witness, the failing memory of another fact witness, and the effect of the passage of time from the trial on the memory of other fact witnesses and the health of yet other surviving witnesses. The District Attorney concluded that these circumstances "render the State unable to prosecute the Defendant for the offense at this time."

The Comptroller correctly points out that these are important policy issues, and they may be addressed with the Legislature because her policy arguments cannot prevail over the words of the

---

[6] The Court of Criminal Appeals remanded Allen to the custody of the Sheriff of Dallas County. While Allen received habeas relief on a *Schlup*-type claim, the Court of Criminal Appeals consistently utilizes a similar procedure for *Herrera*-claimants as well. *See, e.g.*, *Ex parte Henton*, 2006 WL 362331, at *1 (Tex. Crim. App. 2006) (vacating the judgment and sentence of a successful *Herrera* claimant yet ordering that applicant be "remanded to the custody of the Sheriff of Dallas County so that he may answer the charges against him."); *Ex parte Byars*, 176 S.W.3d 841, 842 (Tex. Crim. App. 2005) (granting *Herrera* relief and instructing applicant to be "remanded to the custody of the Sheriff of Jefferson County to answer to the indictment."); *Ex parte Tuley*, 109 S.W.3d 388, 397 (Tex. Crim. App. 2002) (granting *Herrera* relief but returning applicant to "the custody of the convicting court so that he may answer the charges against him."); *Ex parte Elizondo*, 947 S.W.2d 202, 210 (Tex. Crim. App. 1996) (granting *Herrera* relief but returning "applicant to the custody of the county from which he was received so that he may answer the charges against him.").

15

statute.[7] The role of the judicial branch in our government is important but that role "is not to second-guess the policy choices that inform our statutes or to weigh the effectiveness of their results; rather, our task is to interpret those statutes in a manner that effectuates the Legislature's intent." *McIntyre v. Ramirez*, 109 S.W.3d 741, 748 (Tex. 2003). "[T]he Court must adopt the interpretation of the statute that is most faithful to its text . . . . 'If Congress enacted into law something different from what it intended, then it should amend the statute to conform to its intent.'" *Harbison v. Bell*, 556 U.S. 180, 199 (2009) (Thomas, J., concurring) (quoting *Lamie v. United States Trustee*, 540 U.S. 526, 542 (2004)).

The Legislature changed the key statutory language from "not guilty" to "actual innocence" following the Court of Criminal Appeals' recognition of both *Herrera* and *Schlup* as "actual innocence" claims in Texas. Since then, the Legislature has amended the Act three times, in 2007, 2009, and 2011, giving itself ample opportunities to distinguish between *Herrera* and *Schlup* if so desired, but it did not.[8] Where legislative enactments unambiguously direct our path, we must follow. Therefore, we conclude that habeas relief from a *Schlup*-type claim merits compensation under the Act as a writ based on a court finding of actual innocence.

---

[7] Allen submits documentation that the Comptroller made these policy arguments to the Legislature and they were not adopted. However, the language of the TCA renders it unnecessary to consider legislative history.

[8] The Legislature has amended the TCA numerous times to make significant changes for claimants, including, but not limited to, raising the level of compensation, removing the cap on compensation, allowing child support payments, offering tuition aids, and limiting excessive fees charged by attorneys who assist those seeking compensation. The Innocence Project lauds the Legislature for its improvements to the TCA: "Social services provided by Texas are also the best in the nation, including job training, tuition credits and access to medical and dental treatment." Executive Summary: "Making Up For Lost Time: What the Wrongfully Convicted Endure and How to Provide Fair Compensation," The Innocence Project, at 22, *available at:* www.innocenceproject.org/docs/Innocence_Project_Compensation_Report.pdf. All Internet materials as visited May 15, 2012 and available in clerk of Court's file. Additionally, The Innocence Project recognizes that Texas, along with only four other states, meets the recommended compensation standard. *Id.* at 20.

The Legislature has provided for compensation to individuals who have been granted habeas relief based on "actual innocence." This is a narrow class of claimants within a larger class of individuals who obtain habeas relief.[9] The Court of Criminal Appeals has emphasized that Texas recognizes only two types of "innocence" claims—*Herrera* and *Schlup* claims. *Brown*, 205 S.W.3d at 544. Recognizing only two types of "innocence" claims is consistent with the legislatively-identified narrow class of claimants who are entitled to compensation. Indeed, a number of other types of habeas claims fall outside compensable actual innocence claims. *See e.g.*, *Ex parte Vaughn*, 2003 WL 21467074 (Tex. Crim. App. 2003) (not designated for publication) (granting habeas relief to file petition for discretionary review); *Puckett v. State*, 801 S.W.2d 188 (Tex.App.—Houston [14th Dist.] 1990, writ denied) (challenging the penal statute); *Ex parte Wagner*, 905 S.W.2d 799 (Tex.App.—Houston [14th Dist.] 1995, no writ) (challenging a void judgment); TEX. CODE CRIM. PROC. art. 11.07.

## 2. Whether the Order Clearly Indicated on its Face that it was Based on Actual Innocence

The second issue is whether the Court of Criminal Appeals' decision clearly indicated on its face that the writ was based on a court finding or determination of actual innocence. The Comptroller argues that the habeas order does not clearly indicate on its face that Allen was granted relief based on actual innocence. Rather, the Comptroller argues Allen was granted relief, at most, for his ineffective assistance of counsel claim. According to the Comptroller, *Schlup* never satisfies

---

[9] The parties did not supply this Court with the number of persons compensated by the state for wrongful imprisonment. According to The Innocence Project, through the year 2009, there had been forty people in Texas exonerated for crimes they did not commit. "250 Exonerated: Too Many Wrongfully Convicted." The Innocence Project, *available at* www.innocenceproject.org/news/250.php. This statistic, however, does not indicate whether the person received compensation from the state.

§ 103.001(a)(2)(B) because the claim is not based on actual innocence, but is instead a gateway claim to escape a procedural bar.

The Act states that a person is entitled to compensation if the person "has been granted relief in accordance with a writ of habeas corpus that is based on a court finding or determination that the person is actually innocent of the crime for which the person was sentenced." TEX. CIV. PRAC. & REM. CODE § 103.001(a)(2)(B). Further, the documents must clearly indicate on their face that the person is entitled to compensation. TEX. CIV. PRAC. & REM. CODE § 103.051 (b-1). Therefore, in order for Allen to be eligible for compensation under the TCA, the Court of Criminal Appeals' determination must be based on actual innocence. We consider whether the court order was granted or rendered on the basis of the claimant's actual innocence. *See* TEX. CIV. PRAC. & REM. CODE § 103.051 (b-1).

The Court of Criminal Appeals' opinion on its face determines that Allen was actually innocent. The grant of habeas relief means that the Court of Criminal Appeals held that Allen showed actual innocence by a preponderance of the evidence, passing through the gateway to have his ineffective assistance of counsel claim considered on the merits. Actual innocence remains an essential part of the *Schlup* claim, for without the court finding actual innocence, the writ would be denied. *Brooks*, 219 S.W.3d at 400–01. This credible claim of actual innocence "serves to bring the petitioner within the 'narrow class of cases' implicating a fundamental miscarriage of justice." *Id.* at 400 (citing *Schlup*, 513 U.S. at 315). The Court of Criminal Appeals held that "it is not surprising that the habeas court found that the newly discovered evidence 'of innocence [was] so strong that [it could not] have confidence in the outcome of the trial.' We agree." *Allen*, 2009 WL 282739, at *9.

18

The Court of Criminal Appeals granted habeas relief to Allen based on his *Schlup*-type claim, bringing him into the narrow class of cases that satisfy the actual innocence standard. We do not agree with the Comptroller that Allen's relief is based, at most, on ineffective assistance of counsel, because that finding alone would be insufficient to grant habeas relief under *Schlup*. Even if a court does not explicitly state that its holding is based on actual innocence, implicitly the court must find that the applicant is actually innocent to grant relief on a *Schlup* claim. *See Brooks*, 219 S.W.3d at 401. We do not read the Court of Criminal Appeals' opinion as indicating it failed to find actual innocence as to Allen's conviction. Therefore, because the Court of Criminal Appeals granted habeas relief on a *Schlup* claim, Allen's court order clearly indicates on its face that relief was based on actual innocence.

## CONCLUSION

The petition for writ of mandamus is conditionally granted, and we instruct the Comptroller to comply with this opinion and compensate Allen under the terms of the Tim Cole Act. A writ of mandamus will issue only upon the failure to do so.

_____
Dale Wainwright
Justice

**OPINION DELIVERED: May 18, 2012**