# IN THE SUPREME COURT OF TEXAS

No. 18-1041

IN RE COLTON LESTER, RELATOR

ON PETITION FOR WRIT OF MANDAMUS

JUSTICE BLACKLOCK, joined by JUSTICE BOYD as to Part I only, dissenting.

No provision of the Tim Cole Act authorizes compensation in "egregious case[s] of the criminal-justice system gone wrong." *Ante* at ___. Try as it might to make the Act conform to its sense of what Colton Lester deserves, the Court cannot alter the Act's stubbornly narrow text or what the Court of Criminal Appeals (CCA) and this Court have already decided about "actual-innocence" claims and eligibility for wrongful-imprisonment compensation. Lester pleaded guilty to online solicitation of a minor for sex. His conviction was vacated. But he is not "actually innocent," as that concept is understood in habeas corpus law. No court has ever found him to be "actually innocent" (until today), and the Tim Cole Act comes nowhere close to mandating that Texas taxpayers compensate him. The Court's outrage over Lester's prosecution does not change what the Tim Cole Act says or how this Court and the CCA have previously understood "actual-innocence" claims. Lester is not entitled to compensation, and his petition should be denied.

I respectfully dissent.

## I.

The Act states that a wrongfully imprisoned person is entitled to compensation if the person "has been granted relief in accordance with a writ of habeas corpus that is based on a court finding or determination that the person is actually innocent of the crime for which the person was sentenced." TEX. CIV. PRAC. & REM. CODE § 103.001(a)(2)(B). This statutory right to compensation is not triggered by the claimant's "actual innocence" in some abstract sense. In other words, it does not matter whether this Court thinks Lester deserves to be called "actually innocent." Under the statute's text, all that matters is whether *another* court, presented with a habeas corpus petition, has *already* granted relief to Lester "based on a court finding or determination that [Lester] is actually innocent." *Id*. Again, it does not matter whether Lester was "actually innocent" under whatever theory of "actual innocence" this Court announces. Under the statute, what matters is whether the habeas relief Lester *actually obtained* was based on "a court finding or determination" that he "is actually innocent." *Id*.

This Court's decision in *In re Allen* accurately stated the proper standards for deciding wrongful-imprisonment compensation claims. 366 S.W.3d 696, 706 (Tex. 2012). The standards dictated by the Act and by *Allen* look nothing like the "actual-innocence" analysis the Court applies today. The Act requires that we focus exclusively on whether the criminal courts granted habeas relief on "actual-innocence" grounds, as that term is understood in habeas corpus law. Whether we think the applicant is "actually innocent," as we believe that concept should be understood, has nothing to do with it. "Whether compensation may be awarded under the TCA depends, in the first instance, on determinations in the criminal courts of the merits of the applicant's conviction." *Id*. at 703. "The term 'actual innocence' has a particular meaning within habeas corpus

2

jurisprudence, in that it is a particular type of claim 'that may be raised in a collateral attack on a conviction.'" *Id*. at 706 (quoting *Ex parte Tuley*, 109 S.W.3d 388, 390 (Tex. Crim. App. 2002)). "Therefore, in order for [Lester] to be eligible for compensation under the TCA, the Court of Criminal Appeals' determination must be based on actual innocence." *Id*. at 709. In *Allen*, we did not ask, as the Court does today, whether it was fair or just or "outrageous" to think of Allen as "anything but actually innocent." *Ante* at ___. Instead, we did what the statute commands. We limited the analysis to "whether the court order [awarding habeas relief] was granted or rendered on the basis of the claimant's actual innocence." *Allen*, 366 S.W.3d at 709.

As explained above, section 103.001(a)(2)(B) limits the inquiry to an examination of the habeas-granting court's basis for relief. And as *Allen* recognizes, other provisions of the Tim Cole Act reinforce this limitation. "To apply for compensation under this subchapter, the claimant must file with the comptroller's judiciary section," among other things "(2) a verified copy of the pardon, court order, motion to dismiss, and affidavit, as applicable, justifying the application for compensation." *Id.* § 103.051(a)(2). And then, crucially:

> In determining the eligibility of a claimant, the comptroller shall consider only the verified copies of documents filed under Subsection (a)(2). If the filed documents do not *clearly indicate on their face* that the person is entitled to compensation under Section 103.001(a)(2), the comptroller shall deny the claim.

*Id*. § 103.051(b–1) (emphasis added). Thus, the question we should be asking is not merely whether the CCA's grant of habeas relief to Lester "is based on a court finding or determination that [Lester] is actually innocent." *Id*. § 103.001(a)(2)(B). The proper question is whether the CCA's order and related papers "clearly indicate on their face" that Lester received habeas relief "based on a court finding or determination that [he] is actually innocent." *Allen*, 366 S.W.3d at 709 (describing the correct inquiry as "whether the Court of Criminal Appeals' decision clearly

3

indicated on its face that the writ was based on a court finding or determination of actual innocence.").

Despite the statute's plain text and *Allen*'s clear and accurate instruction for how to apply the text, the Court's opinion all but ignores what ought to be the controlling document in this case: the CCA decision granting habeas relief to Lester. Only if *that decision* is "based on a court finding or determination of actual innocence" is Lester entitled to compensation. The decision is worth quoting in its entirety:

> Pursuant to the provisions of Article 11.07 of the Texas Code of Criminal Procedure, the clerk of the trial court transmitted to this Court this application for a writ of habeas corpus. *Ex parte Young*, 418 S.W.2d 824, 826 (Tex. Crim. App. 1967). Applicant was convicted of attempted online solicitation of a minor and sentenced to imprisonment. TEX. PENAL CODE § 33.021(b). There was no direct appeal.
> In *Ex parte Lo*, this Court declared the statute of conviction, § 33.021(b), unconstitutional. *Ex parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013). The trial court, with the State's agreement, finds that Applicant's conviction is not valid in light of *Ex parte Lo*. This Court agrees. *Ex parte Chance*, 439 S.W.3d 918 (Tex. Crim. App. 2014).
>
> Relief is granted. The judgment of conviction for attempted online solicitation of a minor in cause number 23,538 from the 258th District Court of Polk County is set aside, and the cause is remanded to the trial court to dismiss the indictment.

*Ex parte Lester*, No. WR-88,227-01, 2018 WL 1736686, at *1 (Tex. Crim. App. April 11, 2018). In these three short paragraphs, the CCA granted habeas relief to Lester "in light of *Ex parte Lo*," in which the CCA declared the online-solicitation statute unconstitutionally overbroad. *Id*. The CCA did not mention "actual innocence," much less "clearly indicate" that it was granting relief on that basis. The overbreadth of the online-solicitation statute—not Lester's "actual innocence"—formed the basis of the CCA's grant of relief to Lester.

4

*Allen* makes clear that when deciding what "actual innocence" means, we must look to what it means in the CCA's habeas corpus decisions. 366 S.W.3d at 703–07 (analyzing the CCA's understanding of "actual-innocence" claims in the habeas context). At first glance, it might seem odd that this Court is bound by the CCA's understanding of the statutory term "actual innocence" when we are deciding what a non-criminal statute like the Tim Cole Act means. Recall, however, that the inquiry is not whether the claimant is "actually innocent" as this Court understands that term. The inquiry is whether the CCA or another criminal court granted habeas relief based on a "finding or determination" of "actual innocence." Deciding what another court based its decision on can be tricky business, but it is what the statute commands us to do. In so doing, we cannot use our own impression of the equities of the case to discover a "finding or determination" of "actual innocence" that the CCA itself never made. Instead, we must look to what the CCA actually said in its ruling, and what it has said about "actual-innocence" findings in related cases, an approach we previously ratified in *Allen*. The statute does not authorize us to announce new theories of "actual innocence" never recognized by the CCA and then claim that CCA rulings *in the past* were premised on our newly announced theory of "actual innocence." We must not put words in another court's mouth.

Under the Act's text and *Allen*, we must ask whether the CCA considered itself to be granting relief on the basis of "actual innocence," as that term is understood in habeas corpus law, when it granted Lester's habeas petition. Once the inquiry is properly defined, there is no question Lester cannot establish eligibility for compensation. To begin with, the CCA has explicitly disavowed the notion that habeas relief based on the criminal statute's unconstitutionality is tantamount to habeas relief based on "actual innocence." In *Ex parte Fournier*, the CCA rejected

5

the argument that "*Lo* entitles [a]pplicants to [habeas] relief under an 'actual innocence' theory." 473 S.W.3d 789, 790 (Tex. Crim. App. 2015). The CCA squarely held in *Fournier* that applicants whose convictions are overturned based on *Ex parte Lo* have not been granted relief based on claims for "actual innocence." *Id.* at 710.

The Court seems to acknowledge that, under *Fournier*, most applicants who have had their online-solicitation convictions overturned under *Ex parte Lo* are not entitled to wrongful-imprisonment compensation because their habeas relief was not based on their "actual innocence." It claims Lester's case is distinguishable because he committed online solicitation of a minor after *Ex parte Lo* was decided. *Ante* at ___. Thus, the Court reasons, there was "no crime" for Lester to commit, and he is every bit as "actually innocent" as a person walking down the sidewalk. *Id.* at ___. As explained below, it is an oversimplification to say there was "no crime" for Lester to commit. *Infra* at ___. But even if the Court is right—even if the crime of online solicitation of a minor ceased to exist for all purposes the moment *Ex parte Lo* was decided—that does not mean the habeas relief Lester received from the CCA was based on "a finding or determination that [he] is actually innocent." It does not matter whether *Fournier* and this case are "distinguishable" by virtue of their timing relative to *Ex parte Lo*. What matters is whether the CCA order granting habeas relief to Lester is distinguishable from the comparable order in *Fournier* and the many other cases in which the CCA has granted relief in light of *Ex parte Lo*. The CCA has clarified that those orders do not grant relief on the basis of "actual innocence." *Fournier*, 473 S.W.3d at 791. Only if the order granting habeas relief to Lester or the supporting papers "clearly indicate on their face" that the CCA granted Lester's relief on grounds related to the timing of his

6

prosecution after *Ex parte Lo* can Lester's case be distinguished from *Fournier* in a meaningful way.

Lester comes nowhere close to meeting this burden. He did not even argue to the CCA that he should be granted habeas relief under an "actual-innocence" theory due to his having been prosecuted after *Ex parte Lo*. Even if he had argued it, what matters is whether the CCA made a "finding or determination that [Lester] is actually innocent" because his prosecution came after *Ex parte Lo*. The CCA made no such "finding or determination." Quite the opposite, in fact. The passage in which the CCA described its reasons for granting relief to Lester reads: "The trial court, with the State's agreement, finds that Applicant's conviction is not valid in light of *Ex parte Lo*. This Court agrees. *Ex parte Chance*, 439 S.W.3d 918 (Tex. Crim. App. 2014)." *Ex parte Lester*, 2018 WL 1736686, at *1. Thus, the CCA granted habeas relief to Lester because it "agree[d]" that Lester's "conviction is not valid in light of *Ex parte Lo*." This is *exactly* the same reason the CCA gave for granting habeas relief in *Fournier*, where it made clear it was *not* ruling on the basis of "actual innocence": "Although we find against Applicants in their claims for actual innocence relief, Applicants are entitled to relief under *Lo* and our subsequent decision in *Ex parte Chance*." *Fournier*, 473 S.W.3d at 796.

Not only do the CCA's decisions in *Ex parte Lester* and *Fournier* cite the exact same reason for granting habeas relief, they cite the exact same case—*Ex parte Chance*, 439 S.W.3d 918 (Tex. Crim. App. 2014) (per curiam). Chance committed his crime in 2008, and his direct appeals were exhausted in 2011, *Chance v. State*, No. 09-10-00506-CR, 2011 WL 303884, at *1 (Tex. App.—Beaumont Jan. 27, 2011), two years before *Ex parte Lo*. By citing *Ex parte Chance* in granting Lester's habeas petition, the CCA indicated it believed it was granting relief to Lester for the same

7

reasons it had already granted relief to Chance. The CCA explained its reasoning in *Chance* as follows:

> Applicant, through counsel, filed this habeas application based on the *Lo* decision and asks that his convictions be set aside. The trial court recommends granting relief. After considering the trial court's findings and the parties' objections and responses regarding them, this Court agrees with the trial court, and relief is granted.

439 S.W.3d at 918. If the CCA thought the timing of Lester's prosecution and conviction had anything to do with its grounds for granting him habeas relief, it would have said so. By justifying its ruling in Lester's case with a citation to *Chance*, where the crime and conviction occurred before *Ex parte Lo*, the CCA confirmed that its reasons for granting relief had nothing to do with a distinction between pre-*Lo* and post-*Lo* prosecutions. In all these cases—*Fournier*, *Chance*, *Lester*, and others[1]—the CCA granted relief for the same reason: *Ex parte Lo*'s determination that the online-solicitation statute is unconstitutional. And in *Fournier*, the CCA rejected the argument that petitioners appealing to *Ex parte Lo* are entitled to relief on an "actual-innocence" theory. *Fournier*, 473 S.W.3d at 796. As far as the CCA is concerned, Lester is just one more petitioner in a long line of cases governed by *Ex parte Lo* and *Fournier*. That's the end of it. We should take the CCA at its word instead of trying to put words in its mouth.

---

[1] In *Ex parte Mitcham*, the CCA granted relief to a petitioner who, like Lester, was prosecuted after *Ex parte Lo* had already declared the statute unconstitutional. 542 S.W.3d 561 (Tex. Crim. App. 2018). Once again, the CCA's explanation of its decision simply stated: "This Court, in *Ex parte Lo*, held unconstitutional the online solicitation of a minor statute for which Applicant was convicted. *Ex parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013). Applicant filed this habeas application based on the *Lo* decision and asks that his conviction be set aside." *Id.* As with Lester, the CCA gave no indication that it considered Mitcham's entitlement to habeas relief to be any different from the many petitioners whose prosecutions came before *Ex parte Lo* and whose entitlement to relief under an "actual-innocence" theory is barred by *Fournier*. Under the Court's decision today, Mitcham will also be eligible for an award of taxpayer funds. Mitcham, who was 26 years old at the time of his crime, pleaded guilty to the charge of "intentionally distribut[ing] over the Internet sexually explicit material, to-wit: a picture of his penis, to M.S., a minor" with "the intent to arouse or gratify [his] sexual desire." I doubt Mitcham's victim and her family consider his conviction "an egregious case of the criminal justice system gone wrong."

Finally, there is no reason to wonder whether the CCA secretly harbored extra reasons for granting Lester's petition, reasons related to his post-*Lo* prosecution. By citing *Chance* as an analogous case, the CCA left no doubt about the matter. But even if the CCA had left some ambiguity in its decision, that would not be enough for Lester, who is only entitled to compensation if the CCA papers "clearly indicate" that Lester "has been granted relief in accordance with a writ of habeas corpus that is based on a court finding or determination that the person is actually innocent." TEX. CIV. PRAC. & REM. CODE § 103.001(a)(2)(B). Lester cannot even begin to make that showing. He appeals to sympathy for his unusual circumstances, and he raises irrelevant factual distinctions between his situation and that of the petitioners in *Allen* and *Fournier*—none of which has anything to do with the statutory standards governing wrongful-imprisonment compensation. He does not and cannot show that the CCA's grant of habeas relief to him "clearly indicate[s]" that the CCA made a "finding or determination" that he is "actually innocent."

In my view, the Comptroller would have committed a clear abuse of discretion had it *awarded* compensation to Lester on this record. Whether or not this is an "egregious case of the criminal-justice system gone wrong," *ante* at ___, we should let the Legislature and the CCA take care of the criminal-justice system. We should stay in the box drawn for us by the Tim Cole Act. We should deny Lester's petition.

## II.

In addition to misconstruing the statute, the Court also misconstrues the effect of *Ex parte Lo* on the legal landscape. In so doing, the Court overrules *sub silentio* its prior, correct statement—just three years ago—regarding judicial declarations of the unconstitutionality of statutes: "When a court declares a law unconstitutional, the law remains in place unless and until

9

the body that enacted it repeals it, even though the government may no longer constitutionally enforce it." *Pidgeon v. Turner*, 538 S.W.3d 73, 88 n.21 (Tex. 2017) (holding that Texas's traditional marriage laws may retain some legal effect despite *Obergefell v. Hodges*, 574 U.S. 1118 (2015)). After today, that statement from *Pidgeon* hangs from a thread (though it remains correct). Under today's decision, statutes declared unconstitutional by courts no longer exist. *Ante* at ___. Anyone prosecuted under such a statute is not just protected from prosecution by the Constitution. He is just as "actually innocent" as a person taking a walk in the park.[2] *Ante* at ___.

I disagree, and I would stick with the way *Pidgeon* sees it. Although lawyers and judges frequently speak of courts "striking down" or "nullifying" statutes, more careful consideration of the matter readily exposes the deficiency of this colloquial rhetoric of judicial supremacy. Courts are not legislatures. The Texas Constitution reserves the law-making and law-rescinding powers to the Legislature, and it prohibits the judiciary from "exercis[ing] any power properly attached to either of the other[] [branches]." Tex. Const. art. II, § 1. "The power of judicial review . . . permits a court to enjoin executive officials from taking steps to enforce a statute. . . . But the statute continues to exist, even after a court opines that it violates the Constitution . . . ." Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 936 (2018); *see also Winsness v. Yocom*, 433 F.3d 727, 728 (10th Cir. 2006) (McConnell, J.) ("There is no procedure in American law for courts or other agencies of government—other than the legislature itself—to purge from the statute books, laws that conflict with the Constitution as interpreted by the courts.").

---

[2] Until recently, "taking a walk in the park" might have been thought the quintessential example of innocent conduct no free government would criminalize. Since the coronavirus crisis began, walking in the park has become a subversive act of civil disobedience in many places. Texas, thankfully, has for the most part not gone that far.

That a statute continues to exist and to have potential legal consequences after a court declares it unconstitutional is vividly demonstrated by the history of this very case. Lester admitted to violating a criminal statute. When he did so, *Ex parte Lo* had already announced the CCA's view that the online-solicitation statute is unconstitutional and that courts in Texas should not enforce it. While the local police may perhaps be excused for not staying abreast of the CCA's opinions, the prosecutors should have done so, and it was ultimately the job of Lester's counsel to raise the defense of the statute's unconstitutionality. Had his counsel done so, the prosecution would no doubt have ended swiftly. But Lester's counsel did not raise it. Instead, Lester pleaded guilty, and his conviction became a final judgment. When his probation was revoked, he was sentenced to three years in prison. There were many points along this path at which someone should have raised *Ex parte Lo* on Lester's behalf. But that did not happen. And because it did not happen, Lester's conviction gave rise to a procedurally valid final judgment and sentence of imprisonment, which both Lester and the prison system were obligated to follow and which only ceased to be binding when Lester succeeded in a habeas corpus action. All of those real-world events flowed from the statute, which continued to exist and have ongoing legal consequences in cases where *Ex parte Lo* was not raised as a defense.

The Court analogizes Lester's case to someone arrested for the dystopian non-crime of walking in the park. *Ante* at ___. But the two are nothing alike. The Legislature, on behalf of the people of Texas, decided to criminalize online solicitation of a minor to protect children from sexual predators on the internet. The Legislature, which swears the same oath to uphold the Constitution that judges do, did not think a statute criminalizing prurient sexual interaction with children was unconstitutional. Otherwise, they would not have enacted it. The Governor did not

think it unconstitutional either. He signed it. The Court of Criminal Appeals disagreed. It thought the statute unconstitutionally overbroad. Courts tend to have the last word on such matters, and this was no exception, despite a few hiccups.[3]

Unlike someone walking in the park, Lester admitted to doing something the legislative and executive branches deemed criminal. His elected prosecutors believed he deserved to be punished for it. His counsel did not figure out the problem. The judges overseeing his case never asked how it could be that someone like Lester is being punished. It is utterly inconceivable that a prosecution for the non-crime of walking down the street could ever go anywhere near as far as Lester's prosecution did. That is because the two scenarios are nothing alike. Yes, in a perfect world, everyone in the criminal-justice system would stay more up-to-date on CCA opinions. But this is not a perfect world, as this case demonstrates. Prosecuting someone for predatory behavior that has been criminalized by statute—in ignorance of court decisions declaring the statute unconstitutional—bears no resemblance to maliciously prosecuting someone for blameless behavior everyone knows is not a crime.

On top of that, the CCA has never held that the Constitution entitles Lester or anyone else to commit the acts for which they were convicted under the online-solicitation statute. It almost certainly does not. Under the First Amendment overbreadth doctrine, "a law may be declared unconstitutional on its face, even if it may have some legitimate application and even if the parties

---

[3] At least one current member of the Court of Criminal Appeals maintains that *Ex parte Lo* was wrongly decided. *Ex parte Chavez*, No. WR–87,785–01, 2018 WL 1109534 (Tex. Crim. App. Feb. 28, 2018) (Yeary, J., dissenting) ("Once again, the Court today grants post-conviction relief to an applicant whose conduct, as I see it, fails to even remotely constitute protected speech. . . . Because our decision in *Lo* could potentially mislead members of the Legislative Department concerning their legitimate authority to regulate conduct, I believe that the Court should reconsider whether it was decided correctly."). If this judge convinced four of his colleagues of this position, the CCA would overturn *Ex parte Lo*. At that point, I presume Lester would no longer be "actually innocent," even as the Court sees it. Yet he and others like him would already have been paid by the Comptroller.

before the court were not engaged in activity protected by the First Amendment." *State v. Johnson*, 475 S.W.3d 860, 864–65 (Tex. Crim. App. 2015) (citing *United States v. Stevens*, 559 U.S. 460, 473 (2010)). This is an exception to the general rule that prohibits facial injunctions unless the challenger can "establish that no set of circumstances exists under which the Act would be valid." *Rust v. Sullivan*, 500 U.S. 173, 183 (1991) (quoting *United States v. Salerno,* 481 U.S. 739, 745 (1987)). As the CCA understood the law, Mr. Lo did not have to prove that the Constitution protected his behavior in order to win habeas relief based on the online-solicitation statute's overbreadth. *Ex parte Lo*, 424 S.W.3d at 20. He only had to demonstrate that the protected speech of other hypothetical defendants might be chilled if they remained under threat of prosecution for online solicitation.[4] *Id.* at 19. Because of the unusual position of petitioners like Lester— convicted of violating an unconstitutional statute but unable to demonstrate the Constitution protects their behavior—there is vigorous disagreement on the CCA about whether these petitioners, including Lester, should ever have had their sentences vacated. *See Ex parte Lester*, 2018 WL 1736686, at *2 (Yeary, J., concurring) (disagreeing "with the Court's decision to grant relief on that basis" because "the applicant should first demonstrate that the statute was applied unconstitutionally in his case."); *Fournier*, 473 S.W.3d at 805 (Yeary, J., joined by Keller, C.J., dissenting) ("Applicants today have made no showing that the statute that we struck down in *Lo* was unconstitutional as it applied to their conduct. Without such a showing, I am reluctant to

---

[4] The First Amendment overbreadth doctrine is so eager to make sure no constitutionally protected speech is discouraged that it releases sexual predators from prison to ensure others can exercise First Amendment rights without fear of prosecution. The doctrine thus contemplates that securing First Amendment liberties is important enough to trump the State's interest in protecting children from sex crimes. So in this area of the law, the government's desire to protect its most vulnerable citizens from harm may be insufficient to justify laws that infringe constitutionally protected liberties. One wonders whether the government's desire to protect vulnerable citizens from a virus might be subject to similar analysis.

13

extend to them the benefit of a retroactive application of *Ex parte Lo*.")  Because Lester's habeas relief was based on First Amendment overbreadth, there is no reason to think his actions were constitutionally protected and no basis to compare his situation to that of a person "convicted" of the non-crime of walking down the street.

* * *

As the Court interprets the Tim Cole Act, the Legislature has done something quite surprising.  It has decided to pay people who admit to committing acts the Legislature itself deemed criminal.  By invoking the "actual-innocence" standard from habeas corpus law, however, the Legislature attempted to make sure this very outcome would not occur.  The Court's decision today skirts around the statutory text, deviates from prior decisions of this Court and the CCA, and misapprehends the effect of judicial declarations of a statute's unconstitutionality.  We should apply the statute exactly as written and deny Lester's petition.

I respectfully dissent.

_____
James D. Blacklock
Justice

**OPINION DELIVERED:** May 15, 2020