### Ex Parte Leland Harold BROOKS, Applicant.

#### No. AP–75,405.

Court of Criminal Appeals of Texas.

April 4, 2007.

Leland Brooks, pro se.

Jack Roady, Asst. District Attorney, Houston, Matthew Paul, State's Atty., Austin, for State.

## OPINION

MEYERS, J., delivered the opinion of the Court, in which KELLER, P.J., and PRICE, JOHNSON, KEASLER, HERVEY, Holcomb, and COCHRAN, JJ., joined.

This is a subsequent application for a writ of habeas corpus forwarded to this Court pursuant to Article 11.07, section 3, of the Texas Code of Criminal Procedure.[1] Applicant was convicted of possession of a controlled substance.[2] Due to two prior felony convictions, punishment was assessed at a term of life imprisonment. *See* Tex. Health & Safety Code Ann. § 481.112(a). Applicant appealed, and the court of appeals affirmed the conviction. *Brooks v. State*, no. 03–00–00026–CR 2000 Tex.App. LEXIS 8014, 2000 WL 1759289 (Tex.App.-Austin, November 30, 2000, pet. ref'd) (not designated for publication).

In 2002, Applicant filed a post-conviction application for a writ of habeas corpus. The application was denied without written order. Applicant filed this subsequent application, claiming that he is actually innocent and would not have been convicted but for the following constitutional violations: his conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure; the conviction was obtained by the trial court's denial of Applicant's right to be confronted by

---

1. All references to Articles refer to Texas Code of Criminal Procedure.

2. The indictment also alleged that Applicant used and exhibited a deadly weapon, however the jury found him not guilty of the deadly weapon possession.

a confidential informant; and the prosecutor knowingly used perjured testimony.

We filed and set this case to explain the application of Texas Code of Criminal Procedure Article 11.07, section 4(a)(2), which states that an application must contain sufficient specific facts establishing by a preponderance of evidence that, but for a constitutional violation, no rational juror would have found applicant guilty beyond a reasonable doubt.[3] We conclude that an applicant must accompany constitutional-violation claims with a prima facie claim of actual innocence in order to satisfy the requirements of Article 11.07, section 4(a)(2).

## FACTS

A confidential informant told police that Applicant's brother, George Brooks, was selling cocaine out of his hotel room.[4] Officers were familiar with Applicant's brother and went to the hotel to observe the room that was registered in the name of George Brooks. They observed George Brooks taking a bag from the trunk of his car into his room. Shortly thereafter, George Brooks and another man left in Applicant's car, but Applicant stayed in the room. Uniformed officers followed the car and pulled the driver over for committing a traffic violation. Both George Brooks and the other man in the car were arrested for possession of marijuana found in the car. After Applicant's brother was arrested, the officer who was observing the hotel room knocked on the door, and Applicant answered. The officer testified that, when Applicant opened the door, the officer noticed a plastic bag containing a white powder on a table just inside the room. Suspecting that the plastic bag contained drugs, the officer then obtained a warrant to search the rest of the room. On a shelf in the closet, officers found the bag George Brooks had retrieved from his car, which contained over 50 grams of cocaine, a set of scales, and small plastic bags. There was also a loaded handgun in the nightstand drawer. The plastic bag that was visible when Applicant opened the door was later determined to contain 19 grams of cocaine. Applicant was charged with, and convicted of, possessing cocaine weighing more than four grams and less than 200 grams.

In his memo in support of the application for writ of habeas corpus, Applicant states that he is entitled to a new trial based on his claim of actual innocence because he was denied his constitutional right to confront the State's confidential informant, who was mentioned in the testimony of the arresting officer, and because newly discovered evidence that was previously unavailable to him demonstrates that there was never a confidential informant against him.[5] Applicant states that he was an innocent bystander and was merely present in another defendant's residence where cocaine and a firearm were concealed without his knowledge. The newly discovered evidence Applicant refers to is

---

3. The circumstances presented in this case raise a *Schlup* claim. *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). We do not address the application of Texas Code of Criminal Procedure Article 11.07, section 4(a)(2), to *Herrera* claims. *See Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).

4. Applicant and his brother refer to the hotel room as George Brooks' apartment.

5. It appears that the evidence of the prosecutor knowingly using perjured testimony is that the confidential informant told police about Applicant's brother, George Brooks, but did not give any information about Applicant. Therefore, the officer who testified at Applicant's trial should not have mentioned the confidential informant because that implied that there was a confidential informant against Applicant.

an affidavit from his brother, George Brooks, whose arrest led to the search of the apartment where Applicant was arrested. The affidavit states that George Brooks was the sole resident of the apartment and that he was the sole owner of the handgun and of the cocaine that the police found when they searched his apartment. George Brooks states that he agreed to a lesser sentence in exchange for testimony that the cocaine was not his; however he testified at Applicant's trial that the drugs belonged solely to him. He also testified at trial that Applicant did not have care, custody, or control of the apartment where the drugs were found and that Applicant had no knowledge that there was a gun or drugs in the apartment.

## ANALYSIS

 Article 11.07, section 4(a) prohibits review of subsequent applications for writ of habeas corpus except in limited circumstances. The applicant must establish one of the following exceptions:

(1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the application filed the previous application; or

(2) by a preponderance of evidence, but for a violation of the United States Constitution no rational juror could have

found the applicant guilty beyond a reasonable doubt.

TEX.CODE CRIM. PROC. ANN. art. 11.07, § 4(a). Prior to the adoption of the Habeas Corpus Reform Act of 1995, which included the adoption of Article 11.071 [6] and the addition of section 4 to Article 11.07, there was no statute restricting the filing of subsequent applications. The purpose of the Habeas Corpus Reform Act of 1995 was to fulfill the Texas Constitutional mandate requiring a speedy and effective habeas corpus remedy by limiting the availability of subsequent applications and encouraging all-inclusive initial applications. *Ex parte Kerr*, 64 S.W.3d 414, 418 (Tex.Crim.App.2002). Prior to 1995, we did not consistently apply the "abuse-of-the-writ" doctrine. *Id.*

The subsequent-application provision adopts the abuse-of-the-writ doctrine used in federal practice, which limits an inmate to one application for writ of habeas corpus except in exceptional circumstances. Specifically, the subsequent-application provisions in Articles 11.07 and 11.071 were enacted in response to *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. In *Schlup*, the United States Supreme Court ruled that the federal habeas corpus petitioner must show that a constitutional violation "more likely than not" resulted in the conviction of an innocent person. *Id.* at 327, 115 S.Ct. 851. This was an adoption of the *Carrier*[7] standard. The more stringent *Sawyer*[8] stan-

6. Article 11.071 provides the procedure for death-penalty cases. The language in Article 11.071, section 5(a)(2) is identical to that in Article 11.07, section 4(a).

7. *See Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The *Carrier* standard requires the habeas petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." To establish the requisite probability, the petitioner must show

that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. *Schlup*, 513 U.S. at 327, 115 S.Ct. 851.

8. *Sawyer v. Whitley*, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992) (holding that a habeas petitioner must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty).

dard was rejected, and the Court reasoned that, in a case in which the petitioner claims that a constitutional error resulted in the conviction of one who is actually innocent of the crime, the *Carrier* standard strikes the balance between the societal interest of finality and the individual interest in justice. *Schlup*, 513 U.S. at 324, 115 S.Ct. 851. The Court discussed the need for an exception to adequately protect against the kind of miscarriage of justice that would result from the execution of a person who is actually innocent. "To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving, this Court explicitly tied the miscarriage of justice exception to the petitioner's innocence." *Id.* at 321, 115 S.Ct. 851. While *Schlup* involved a federal habeas corpus petition in a death-penalty case, the reasoning can be equally applied to both Texas Code of Criminal Procedure Articles 11.07, section 4(a), and 11.071, section 5(a)(2). A credible claim of actual innocence serves to bring the petitioner within the "narrow class of cases" implicating a fundamental miscarriage of justice. *Id.* at 315, 115 S.Ct. 851. In other words, showing actual innocence by a preponderance of evidence is a gateway through which a habeas petitioner must pass in order to have an otherwise-barred constitutional claim considered on the merits. *Id., citing Herrera v. Collins,* 506 U.S. at 404, 113 S.Ct. 853.

The situation in this case can be analogized to claims under another subsequent-writ provision, Article 11.071, section 5(a)(1), in which the merits of a subsequent writ may be considered if the application contains sufficient specific facts establishing that the legal basis for the claim was unavailable when the applicant filed the previous application. In *Ex Parte Staley,* 160 S.W.3d 56, 64 (Tex.Crim.App.2005), we stated that "a death-row inmate may file a subsequent writ application based upon the newly available legal claim of mental retardation under *Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) but if his application states that his I.Q. has repeatedly been tested at 120–130, he has failed to state sufficient specific facts establishing a cognizable claim under *Atkins.*" While Article 11.071, section 5(a)(1) does not state that the application must include facts establishing that the applicant has a prima facie *Atkins* claim, it would be absurd to consider applications in which the applicant does not show that the previously unavailable legal basis applies to his claim. To read the statute otherwise would mean that every time a new law is passed or precedent is set, every inmate could file a subsequent application for writ of habeas corpus, regardless of whether the newly available legal basis applied to his situation, and the court would have to consider the merits. This clearly undermines the purpose of the subsequent-writ provisions. Similarly, while the text of section 4(a)(2) does not specifically state that the applicant must make a prima facie claim of actual innocence in addition to the claim of a constitutional violation, it is inherent in the subsequent-writ provisions that the applicant meet the threshold requirement before the merits of his claim will be considered. It is not necessary for an applicant to prove his innocence, rather, all that is necessary is a prima facie showing of actual innocence, sufficient to overcome section 4, so that we can then consider the merits of the claim.

The purpose of the subsequent-writ provisions is to provide review only in those cases where the legal basis for the claim was previously unavailable, or to remedy a "miscarriage of justice." In *Schlup,* the

"miscarriage of justice" was explicitly tied to cases of actual innocence. 513 U.S. at 314–15, 115 S.Ct. 851. Limiting section 4(a)(2) to review of only those applications containing prima facie claims of actual innocence prevents abuse of the writ, which was the goal of the subsequent-writ provision. But it also allows review of the merits in the exceptional circumstances of a constitutional violation resulting in the conviction of one who is actually innocent of the offense. On the other hand, for us to review applications lacking a prima facie claim of actual innocence re-opens the door to potential abuse of the writ and ignores society's interest in finality of judgment.

## CONCLUSION

■ Under section 4, we may not consider the merits of an application unless it includes sufficient specific facts establishing by a preponderance of the evidence that, but for a constitutional violation, no rational juror would have found the Applicant guilty. We have determined that this necessarily includes a prima facie showing of actual innocence in order for the applicant to demonstrate that the constitutional violation at his trial resulted in a miscarriage of justice. This showing allows us to consider a constitutional claim which otherwise would have been barred by section 4. In the case before us, Applicant states that he is actually innocent, "that he was an innocent bystander and had no knowledge of drugs and a firearm," and that "parts of the trial record would clearly demonstrate and prove Petitioner's actual innocence." However, this is not enough for us to consider the merits of his application. The basis of Applicant's innocence claim is that his brother, George Brooks, was the sole target of the investigation. While this may be true, it does not change the fact that the investigation of George led officers to Applicant. And, when the officer first spoke to Applicant, there were 19 grams of cocaine in plain view in the room in which he was the sole occupant. Applicant does not meet the threshold requirement of showing that a constitutional violation led to a miscarriage of justice due to the incarceration of someone who is actually innocent. Because Applicant does not include a prima facie claim of actual innocence in addition to his constitutional claims, this application is dismissed under Article 11.07, section 4.

WOMACK, J. concurred.