IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. WR-49,984-02






EX PARTE CATHY LYNN HENDERSON, Applicant









ON APPLICATION FOR A WRIT OF HABEAS CORPUS

FROM CAUSE NO. 94-2034 IN THE 229TH DISTRICT COURT

TRAVIS COUNTY





 Keasler, J., filed a dissenting statement. 



DISSENTING STATEMENT



 Without one word of analysis, four members of the Court reach the breathtaking
conclusion that Cathy Lynn Henderson's subsequent application meets the requirements of
Article 11.071, Section 5(a). (1) Calvin Coolidge once said, "If you don't say anything, you
won't be called upon to repeat it." Today the per curiam opinion tacitly amends Silent Cal's
adage to say "If you don't say anything, you won't be called upon to justify it." The only
explanation for the absence of any analysis is that their conclusion is indefensible. They dare
not set out their reasons because they might have to defend them. Instead, it is simply,
"Because we say so." 

 Over fifty years ago, Justice Robert H. Jackson warned: "There is a danger that, if the
Court does not temper its doctrinaire logic with a little practical wisdom, it will convert the
constitutional Bill of Rights into a suicide pact." (2) But today, the majority employs neither
logic nor common sense. 

 Section 5(a) prevents us from considering "the merits of or grant[ing] relief based on
the subsequent application unless the application contains sufficient specific facts"
demonstrating that: 


 (1) the current claims and issues have not been and could not have
been presented previously in a timely initial application or in a
previously considered application filed under this article or
Article 11.07 because the factual or legal basis for the claim was
unavailable on the date the applicant filed the previous application;

(2) by a preponderance of the evidence, but for a violation of the
United States Constitution no rational juror could have found the
applicant guilty beyond a reasonable doubt; . . . . (3)

I. 

 Even assuming that the biomechanical evidence regarding causes of infant head trauma
was previously unavailable, (4) Henderson has failed to present a cognizable claim of actual
innocence based on newly-discovered evidence. (5) The "newly-available" biomechanical
evidence does not constitute evidence that "unquestionably establish[es]" Henderson's
innocence under Ex parte Elizondo. (6) As the majority observes, the affidavits and reports of
Drs. John J. Plunkett, Peter J. Stephens, Janice J. Ophoven, and Kenneth Monson concerning
recent advances in "biomechanics and physics suggest that it is possible that Brandon's head
injuries could have been caused by an accidental short-fall distance." The words "suggest,"
"possible," and "could" denote uncertainty. And here the obvious uncertainty pertains to
whether Brandon's death was the result of an accident. This is a far cry from setting out
sufficient specific facts establishing actual innocence. Additionally, Dr. Bayardo's revised
opinion, which the majority identifies as a "material exculpatory fact," does not affirmatively
rule out that Henderson acted intentionally. In short, the evidence submitted by Henderson
only serves to support the defense she advanced during her 1995 trial--that Brandon's death
was the result of an accident, as opposed to an intentional act. Henderson has therefore failed
to make the requisite threshold showing "by clear and convincing evidence that no reasonable
juror would have convicted [her] in light of the new evidence." (7) 

II.

 Henderson has also failed to set forth sufficient specific facts establishing actual
innocence under Schlup v. Delo. (8) The majority is sphinx-like about Henderson's Schlup-based claims, so I will discuss them here. First, she argues that the trial judge's refusal to
appoint a biomedical expert constituted a due process violation under Ake v. Oklahoma. (9) 
Second, reasserting an issue raised and rejected on direct appeal, (10) she claims that the trial
judge's "orders regarding production of the confidential map and refusing to suppress the
evidence that the state obtained through use of the map violated [her] rights under the Fifth and
Sixth Amendments." Relying on Fisher v. United States, (11) she asserts that we erred in
overruling her claim. Because this Court has already rejected the merits of this claim, it is
procedurally barred (12) and therefore not cognizable. (13) Considering Henderson's Ake due
process claim, under Section 5(a)(2), she must make a prima facie showing of actual
innocence. Henderson must therefore make a threshold showing that no rational juror could
have found her guilty beyond a reasonable doubt in light of the new evidence. (14) For the same
reasons discussed above with respect to her free-standing claim of actual innocence,
Henderson has not met her burden under Section 5(a)(2). Henderson's actions following
Brandon's death support this conclusion. 

 The author of Proverbs tells us, "The wicked flee when no man pursueth, but the
righteous are bold as a lion." (15) Over two thousand years later, in less majestic language, we
noted that "[w]e have repeatedly held that flight is evidence of a circumstance from which an
inference of guilt may be drawn." (16) And this concept comports with common sense. What is an innocent man or woman's reaction when a baby has a serious accident? Is
it to bury the baby and flee the state? Of course not. He or she administers first aid, calls an
ambulance, calls a neighbor for help, drives the baby to the hospital--in short, takes remedial
action. What did Henderson do? She buried Brandon's three-and-a-half-month-old body and
skedaddled to Missouri.

 And what did Henderson do then? Why, she sipped a few margaritas and, according to
her friend and confidant, admitted that she had "killed somebody or murdered somebody." (17) 
Is this consistent with her innocence? Of course not.

 We at least give lip-service to the principle that we consider the totality of the
circumstances when deciding whether an application meets the requirements of Section 5(a). 
So in inferentially doing so, I can only conclude that the Court has used the "divide and
conquer" or "piecemeal" analysis of the evidence condemned by the Supreme Court in United
States v. Arvizu (18) rather than considering the evidence as a whole. (19)

 III.

 Finally, the Court brushes aside Henderson's third claim--that she is no longer a future
danger. But that is inconsistent with our opinion in Berry v. State, (20) handed down less than two
weeks ago, in which the same five-judge majority held that a defendant who murdered one child
and left another naked in a ditch on an anthill was not a future danger to society and reformed
her sentence from death to life imprisonment. According to the majority's reasoning,
Henderson would be less culpable than Berry. The majority should explain why this claim is
not cognizable. This claim amounts to nothing more than a challenge to the sufficiency of the
evidence, which, in fact, is not cognizable. (21) 

 In Berry, and again today, I detect a tendency in the majority of this Court to minimize
the culpability of criminals who victimize the most vulnerable of human beings--our children. 

IV.

 Henderson's application should be dismissed as an abuse of the writ. Because the Court
refuses to do so, I dissent.


DATE DELIVERED: June 11, 2007

PUBLISH 
1. Tex. Code Crim. Proc. Ann. art. 11.071 § 5(a) (Vernon 2005). 
2. Terminiello v. Chicago, 337 U.S. 1, 37 (1949) (Jackson, J., dissenting).
3. Tex. Code Crim. Proc. Ann. art. 11.071 § 5(a)(1), (2).
4. Id. § 5(a)(1), (e).
5. Ex parte Campbell, No. WR-44,551-03, 2007 Tex. Crim. App. LEXIS 504, at
*10 n.7 (Tex. Crim. App. Apr. 25, 2007) (citing Ex parte Brooks, 219 S.W.3d 396, 400 
(Tex. Crim. App. 2007); Ex parte Staley, 160 S.W.3d 56, 64 (Tex. Crim. App. 2005)).
6. 947 S.W.2d 202, 209 (Tex. Crim. App. 1996). 
7. Ex parte Elizondo, 947 S.W.2d at 209; see also Ex parte Blue, No. AP-75,254,
2007 Tex. Crim. App. LEXIS 318, at *27 (Tex. Crim. App. Mar. 7, 2007). 
8. 513 U.S. 298, 327 (1995); see also Ex parte Brooks, 219 S.W.3d at 400.
9. 470 U.S. 68, 83-87 (1985).
10. Henderson v. State, 962 S.W.2d 544, 551-57 (Tex. Crim. App. 1997). 
11. 425 U.S. 391, 404 (1976).
12. Ex parte Acosta, 672 S.W.2d 470, 472 (Tex. Crim. App. 1984).
13. Ex parte Campbell, 2007 Tex. Crim. App. LEXIS 504, at *10 n.7 (citing Ex
parte Brooks, 219 S.W.3d at 400; Ex parte Staley, 160 S.W.3d at 64).
14. Tex. Code Crim. Proc. Ann. art. 11.071 § 5(a)(2).
15. Proverbs 28:1 (K J V). 
16. Colella v. State, 915 S.W.2d 834, 839 n.7 (Tex. Crim. App. 1995) (citing Foster
v. State, 779 S.W.2d 845, 859 (Tex. Crim. App. 1989)); see also Hernandez v. State, 939
S.W.2d 173, 178 (Tex. Crim. App. 1997); Valdez v. State, 623 S.W.2d 317 (Tex. Crim.
App. 1981); Holloway v. State, 525 S.W.2d 165 (Tex. Crim. App. 1975).
17. 31 R.R. at 347.
18. 534 U.S. 266, 272-77 (2002).
19. See also Schlup, 513 U.S. at 328.
20. No. AP-74,913, 2007 Tex. Crim. App. LEXIS 651, at *30-42 (Tex. Crim. App.
May 23, 2007).
21. Ex parte Easter, 615 S.W.2d 719, 721 (Tex. Crim. App. 1981); Ex parte
Williams, 703 S.W.2d 674, 677 (Tex. Crim. App. 1986); Ex parte McLain, 869 S.W.2d
349, 350 (Tex. Crim. App. 1988).