

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-76,665

**EX PARTE ADRIAN CHAVEZ, Applicant**

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 757192 IN THE 183RD DISTRICT COURT
### FROM HARRIS COUNTY

**PRICE, J., filed a dissenting opinion in which KEASLER, J., joined.**

### DISSENTING OPINION

This is a subsequent application for writ of habeas corpus brought under the auspices

of Article 11.07, Section 4(a)(1) and (b) of the Texas Code of Criminal Procedure.[1] Today

---

[1] TEX. CODE CRIM. PROC. art. 11.07, § 4(a)(1) ("If a subsequent application for writ of habeas corpus is filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that [*inter alia*] . . . the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the . . . legal basis for the claim was unavailable on the date the applicant filed the previous application[.]"); *id*. § 4(b) ("For purposes of Subsection (a)(1), a legal basis of a claim is unavailable on or before a date described by Subsection (a)(1) if the legal basis was not recognized by and could not have been reasonably formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of this state on or before that date.").

the Court issues an opinion denying the applicant relief on the merits of his claim. I do not disagree that the applicant is not entitled to relief on the merits, but I would dismiss the applicant's writ application as abusive rather than deny him relief on the merits. I therefore respectfully dissent.

## I.

We filed and set the applicant's initial application for writ of habeas corpus six years ago and wrote an opinion that denied him relief.[2] In that opinion, we explicitly addressed only one of the claims that the applicant had raised, and denied the remaining claims without specifically addressing them.[3] In the claim that we expressly addressed, the applicant argued that he was entitled to a new punishment proceeding on the basis of new evidence that had come to light demonstrating that he was "actually innocent" of the fifty-five year sentence that had been imposed. In his subsequent writ application, the applicant now relies upon the same facts that fueled his initial writ application. It is no surprise, therefore, that he does not try to justify our review of the merits of his present claim on the basis of newly available *facts*. Instead, he argues that this Court has made new *law* since we rejected his initial writ application and that this new law renders his present claim newly available under Section 4(a)(1). Because we are not authorized to "consider the merits" of "claims and issues" in a subsequent writ application that do not meet the criteria of Section 4(a)(1), however, and

---

[2]
    *Ex parte Chavez*, 213 S.W.3d 320 (Tex. Crim. App. 2006).

[3]
    *Id*. at 326 n.30.

because I conclude that the applicant ultimately fails to meet those criteria, I would dismiss the present writ application rather than deny it.

**II.**

The facts as we recited them in our opinion on the applicant's initial writ application are as follows:

> The applicant was indicted and tried for capital murder, but convicted of the lesser offense of aggravated robbery, and sentenced to fifty-five years in prison. His conviction was affirmed on direct appeal. The case involved the home invasion of a drug dealer, who was fatally shot during the course of the incident. Two witnesses who were present testified at trial that the applicant was the shooter. One claimed that he recognized the applicant when, at one point, the applicant pulled down the bandana that had been covering his face. The other identified the applicant because he claimed to recognize the applicant's voice and his physique. The applicant testified to an alibi, but he was unable to produce any corroborating witnesses.
>
> While the jury was out deliberating the applicant's guilt or innocence, the applicant informed his trial counsel for the first time that he had indeed been involved in the robbery, but only as the wheel-man rather than one of the home-invaders. He denied being the shooter. At the applicant's request, his trial counsel arranged a meeting with the prosecutor so that they could convey this information to her. Before the applicant and his counsel could conclude their meeting with the prosecutor, however, the jury returned its verdict of guilty. Later, after the jury returned its punishment verdict and the trial court pronounced sentence, the applicant's trial counsel conducted an informal colloquy on the record with the applicant to establish these facts.
>
> In the course of its subsequent investigation, the State identified other witnesses, previously unknown to the State, who could testify that two other individuals had admitted to perpetrating the home invasion, one of whom was the actual shooter in the case rather than the applicant. Both of those individuals were subsequently charged with, and pled guilty to, aggravated robbery, and each was assessed a thirty-year sentence. Even so, both of the witnesses who originally identified the applicant as the shooter in the case have submitted affidavits in which they assert that they still believe, based

upon their perceptions of the event, that the applicant is the one they saw kill the drug dealer, and that they would testify again to that effect. The prosecutor at the applicant's trial has also submitted an affidavit in which she asserts that at the time of trial, she had no knowledge of any evidence that the applicant was *not* the shooter, and no reason to disbelieve or distrust the witnesses who testified against him at his trial.[4]

In his initial writ application, the applicant claimed that the newly discovered evidence that he was not one of the principal actors in the offense constituted evidence that he was "actually innocent" of the fifty-five year punishment he received.

Among the reasons we gave for rejecting this claim, we observed that the newly discovered evidence was not "material" to the jury's assessment of punishment:

> That the jury acquitted the applicant of capital murder and murder suggests that the jurors did not believe he was the shooter in any event; otherwise, they would not have had any rational basis to acquit him of the homicide offenses but still convict him (presumably as a party) of aggravated robbery. Because it appears that the jury in its capacity as the sentencing entity did not believe the applicant was the shooter in any event, we do not believe there is a reasonable probability–that is to say, a probability sufficient to undermine our confidence in the outcome–that the jury would have assessed anything other than the fifty-five-year sentence that it actually did assess.[5]

The applicant now argues that the same turn of events that he initially invoked in support of his claim of "actual innocence" of a fifty-five year sentence will now support a claim that his conviction violated federal due process because it was predicated upon false evidence. Such a claim is available to him now, he maintains, because, since we denied relief in his initial

---

[4] *Id*. at 321-22 (footnote omitted).

[5] *Id*. at 326 (footnote omitted).

writ application back in 2006, we have held for the first time, in *Ex parte Chabot*,[6] that the State's inadvertent use of false evidence to obtain a conviction may, if that false evidence should prove material, violate due process.

### III.

Does our opinion in *Chabot* provide a legal basis for relief that was previously unavailable law in contemplation of Article 11.07, Section 4(b)? Could our holding there "have been reasonably formulated from" a final decision of an appellate court as of the date that the applicant filed his initial writ application?[7] I am not certain. But, ultimately, I do not think it matters in this case. For we have all but held that it is enough to declare a subsequent Article 11.07 habeas application abusive, under Section 4(a)(1), if it fails to allege facts sufficient to bring the applicant within the ambit of his asserted new legal basis for relief.[8] In other words, an applicant fails to satisfy Section 4(1)(a), not only by failing to

---

[6]

300 S.W.3d 768 (Tex. Crim. App. 2009).

[7]

TEX. CODE CRIM. PROC. art. 11.07, § 4(b).

[8]

*See Ex parte Brooks*, 219 S.W.3d 396, 400-01 (Tex. Crim. App. 2007) (holding that a non-capital subsequent habeas application was abusive under Article 11.07, Section 4(a)(2) because it did not establish a prima facie case for threshold actual innocence). *Cf. Ex parte Campbell*, 226 S.W.3d 418, 421 (Tex. Crim. App. 2007) ("[T]o satisfy Art. 11.071, § 5(a) [the capital analog to Article 11.07, Section 4(a)(1)], 1) the factual or legal basis for an applicant's current claims must have been unavailable as to all of his previous applications; and 2) the specific facts alleged, if established, would constitute a constitutional violation that would likely require relief from either the conviction or sentence." (footnote omitted)); *Ex parte Staley*, 160 S.W.3d 56, 63 (Tex. Crim. App. 2005) ("Under both Article 11.07 and Article 11.071, . . . it is not sufficient to allege that a legal claim was unavailable at the time of the applicant's original filing if the facts alleged in the subsequent application do not bring the constitutional claim under the umbrella of that 'new' legal

identify genuinely novel law, but also (and independently) by failing to allege facts that make

out a prima facie case for relief even under the novel law he purports to identify.[9]  A

subsequent writ application that is deficient in this latter regard should be dismissed rather

than denied.[10]

---

claim.").

[9]

   In *Rocha v. Thaler*, the Fifth Circuit has observed:

> One feature of the CCA's decision in [*Ex parte*] *Campbell* warrants particular attention.  *Campbell* establishes that the requirements of § 5(a)(1) [of Article 11.071, and therefore, one would think analogically, of Article 11.07, § 4(a)(1)] should be applied sequentially.  The CCA first examines whether the factual or legal basis of the claim was unavailable at the time of the original application.  Only if the applicant can surmount the unavailability hurdle does the CCA proceed to ask whether the application makes out a claim that is prima facie meritorious.

626 F.3d 815, 834 (5th Cir. 2010) (opinion on panel reh'g) (footnote omitted).  With all due respect to Judge Higginbotham, I disagree with his reading of our opinion in *Campbell*.  It is true that in *Campbell* itself we first asked whether Campbell had identified new law and only *then* asked whether he had established a prima facie case for facts that would bring him within that new law.  But conducting the analysis in this order in *Campbell* did not amount to an express holding that a statutory abuse-of-the-writ analysis can proceed *only* in this sequence.  As far as I am concerned, we should dismiss a subsequent writ as abusive if it fails to satisfy *either* the new-law *or* the prima facie statement of facts aspect of the pleading requirement; we should not necessarily have to conduct *both* analyses.  *Cf. Strickland v. Washington*, 466 U.S. 668, 697 (1984) (if federal habeas applicant fails to satisfy either the deficiency prong or the prejudice prong of the Sixth Amendment ineffective assistance of counsel claim, a reviewing court may deny relief; it is not necessary under those circumstances to undertake both inquiries, much less undertake them in any particular order).  I do not think we bound ourselves to any particular sequence in *Campbell*.

[10]

   In *Brooks*, *Campbell*, and *Staley*, all *supra*, we dismissed the applications as abusive.  *See also Ex parte Alba*, 256 S.W.3d 682, 691 (Tex. Crim. App. 2008) (Cochran, J., concurring) ("In the context of an Article 11.071 subsequent writ application, an applicant fails to surmount the Section 5 procedural bar to allow for the considerations of the merits of a subsequent claim if he fails to make a prima facie showing of a constitutional violation.  This is a state-law procedural bar that the Legislature has enacted and that this Court must enforce.  In those cases, we dismiss the subsequent application without returning it to the trial court to make factual findings because we have already

Even on the face of it, the applicant cannot bring himself within the ambit of *Chabot*. This is so for the same reason we announced, in his initial writ, that he could not establish a due process violation at the punishment phase of his trial—a manifest lack of materiality. Assuming that the witnesses who identified the applicant as the shooter at his trial testified "falsely,"[11] that falsehood clearly had no impact on the deliberative process of the jurors, who in any event almost certainly did not believe those witnesses—otherwise, the jury would have had no rational basis to acquit the applicant of capital murder and murder, but convict him (presumably as a party) of aggravated robbery. On this state of the record, whatever standard of materiality may apply,[12] the applicant cannot possibly clear it. I would hold, therefore, that the applicant cannot make a prima facie case of false *material* evidence; he thus cannot take advantage of our holding in *Chabot* even if it is newly available as to him.

Because I believe the Court lacks authority to rule on the merits of the present subsequent writ application, I dissent to its order denying relief on the merits. I would dismiss the application as abusive.[13]

---

determined that the applicant has not pled sufficient facts that, even if proven, could support relief.")

[11] Those witnesses have apparently never recanted, however, even to this day. *Chavez*, *supra*, at 326.

[12] *See Ex parte Napper*, 322 S.W.3d 202, 241-44 (Tex. Crim. App. 2010) (discussing various standards of materiality application of which depends upon whether trial testimony was perjurious or false and whether applicant had an opportunity to complain about it on direct appeal).

[13] Either way, of course, the applicant obtains no habeas corpus relief in state court. Nevertheless, I presume that either way the federal courts will deem themselves able to consider the

FILED:     May 23, 2012
PUBLISH

---

merits of the applicant's present claim in any later federal petition for writ of habeas corpus (any writ that is not *itself* abusive, under the terms of 28 U.S.C. § 2244(b)). An order dismissing a subsequent state habeas corpus application under Article 11.07, Section 4(a)(1), that is expressly predicated upon the failure of that subsequent application to establish a prima facie case will not be considered by the Fifth Circuit to derive from an adequate and independent state law ground, and thus, subject to federal review on the merits. *Ruiz v. Quarterman*, 504 F.3d 523, 527-28 (5th Cir. 2007); *Balentine v. Thaler*, 626 F.3d 842, 853 (5th Cir. 2010) (opinion on panel reh'g); *Rocha*, *supra*, at 835.