

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. AP-76,947

### EX PARTE CASEY TYRONE SLEDGE, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS IN CAUSE NO. 52026-02-B FROM THE 181ST DISTRICT COURT OF POTTER COUNTY

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and WOMACK, KEASLER, and HERVEY, JJ., joined. ALCALA, J., filed a dissenting opinion in which COCHRAN, J., joined. JOHNSON, J., dissented. MEYERS, J., did not participate.

### OPINION

Pursuant to a plea bargain with the State, the applicant was placed on deferred adjudication for the offense of sexual assault of a child.[1] The convicting court later adjudicated the applicant's guilt and sentenced him to five years' imprisonment because, among other things, he allegedly committed two new offenses. No appeal was taken. The applicant filed an initial post-conviction application for writ of habeas corpus pursuant to

---

[1] TEX. PENAL CODE § 22.011(a)(2).

Article 11.07 of the Texas Code of Criminal Procedure,[2] in which he claimed that there was insufficient evidence to support his conviction. On March 28, 2012, we denied the initial writ application without written order. This is a subsequent post-conviction application for writ of habeas corpus. In it, the applicant alleges that the trial court lacked jurisdiction to revoke his deferred adjudication community supervision because the capias for his arrest did not issue until three days after his community supervision period expired. In *Langston v. State*,[3] we held that a trial court loses jurisdiction to proceed to adjudicate a defendant's guilt when the district clerk fails to issue a capias before his probationary period expires.

While we are not unsympathetic to the applicant's claim, this Court lacks the authority to grant him relief. Because this is a subsequent post-conviction writ application, we are barred by the abuse of the writ doctrine, as codified by Section 4 of Article 11.07, from reaching the merits of that claim, much less granting relief.[4] Section 4 of Article 11.07 contains three statutory exceptions to the general rule that bars consideration of a subsequent post-conviction writ application, but the current application "contains" no "sufficient specific facts establishing" any of the enumerated exceptions.[5] The application fails to contain facts

---

[2]

TEX. CODE CRIM. PROC. art. 11.07. All subsequent references to Articles are to the Texas Code of Criminal Procedure.

[3]

800 S.W.2d 553, 554 (Tex. Crim. App. 1990), *overruled in part by Harris v. State*, 843 S.W.2d 34, 35 (Tex. Crim. App. 1992).

[4]

Article 11.07 § 4(a).

[5]

*Id.*

that establish either new law, new facts, or actual innocence.

**New Law:** If an applicant can invoke a legal basis for relief that was unavailable at the time of his initial post-conviction writ application, the applicant may overcome the Section 4 statutory bar.[6] To do so, he must establish that

> the legal basis was not recognized by and could not have been reasonably formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of [the State of Texas] on or before [the date of the application].[7]

The applicant fails to allege, and we are unaware of, any new legal basis that would sidestep the statutory bar that prevents us from reaching the merits of his claim.

**New Facts:** A subsequent application may also avoid a Section 4 bar by establishing that a factual basis now exists that was unavailable to the applicant when he filed his initial post-conviction writ application.[8] A new factual basis is one that could not have been discovered "through the exercise of reasonable diligence" before the date of the initial application.[9] We have stated that reasonable diligence "suggests at least some kind of inquiry has been made into the matter at issue."[10] In the instant case, the applicant claims he meets

---

[6] Article 11.07 § 4(a)(1).

[7] Article 11.07 § 4(b).

[8] Article 11.07 § 4(a)(1).

[9] Article 11.07 § 4(c).

[10] *Ex parte Lemke*, 13 S.W.3d 791, 794 (Tex. Crim. App. 2000).

this exception because "he did not discover" the factual basis for the current claim until "on or about June 7, 2012," after he filed his initial post-conviction writ application. But the applicant does not explain why he was unable, through reasonable diligence, to ascertain the information before filing his initial post-conviction writ application. In fact, it is readily apparent that the applicant could have easily obtained the information before now, just as he did for the purpose of developing his current post-conviction writ application.[11]

**Innocence:** If the application includes facts that establish "by a preponderance of the evidence" that, absent a federal constitutional violation, "no rational juror could have found the applicant guilty beyond a reasonable doubt," he may defeat the bar prohibiting a

---

[11]

Before filing this subsequent post-conviction writ application, the applicant set out to prove that the trial court lacked jurisdiction to adjudicate his guilt because the capias issued after his probationary period expired. *See Langston*, *supra*. To bolster his claim, the applicant attached as Exhibit "A" a letter he apparently wrote, dated June 7, 2012, to a "Mr. Brian Thomas." An apparent response to the applicant's inquiry is written on the face of the same letter from a "Deputy Selman" from "Warrants and Extraditions," informing the applicant of the date his capias issued. The applicant does not refer to the letter in this exhibit in the body of his application. We have no information as to the identity or authority of Brian Thomas. Nor can we tell who Deputy Selman is, what law enforcement entity he works for, or when he apparently answered the applicant's query. However, it seems that, in response to his query, the applicant was able to obtain a copy of his capias, revealing the date the district clerk issued it, which the applicant also attaches as Exhibit "C."

Though Exhibit "A" does not tell us when the applicant may have received his reply from Selman, the applicant alleges that "on or about June 7, 2012" he learned the date that his capias issued, presumably (although he does not expressly say so) from Selman. Thus, by his own admission, the applicant was able to obtain the necessary data, including a copy of the capias, to bring his current claim within a period of a few days of his first attempts to do so. The relative ease with which he was able to discover the facts necessary to support the current writ application indicates a minimum amount of effort would have been necessary for the applicant to secure the same information, through reasonable diligence, before filing his initial post-conviction writ application.

subsequent post-conviction writ application.[12]  In *Ex parte Brooks*,[13] we explained that, to invoke this exception to the statutory bar, a subsequent application must contain facts to establish both a prima facie claim of a constitutional violation and a prima facie claim of actual innocence.  Here, the applicant does not even attempt to make a prima facie claim of either a constitutional violation or his actual innocence, so he cannot avoid the Section 4 bar under this exception.[14]

**The Dissent—Jurisdiction:**  The dissent argues that, regardless of the dictates of Section 4, the lack of *jurisdiction* over a case will render the judgment void, and such a judgment "may always be collaterally attacked."[15]  But we have never said that "always" in this context should include for the first time in a subsequent application for writ of habeas corpus that fails to satisfy any of the three exceptions to our statutory abuse of the writ

---

[12]

Article  11.07 § 4(a)(2).

[13]

219 S.W.3d 396, 400 (Tex. Crim. App. 2007).

[14]

Under the actual innocence exception to the abuse of the writ doctrine codified in Section 4, the applicant must establish a "violation of the United States Constitution[.]" TEX. CODE CRIM. PROC. art. 11.07 § 4(a)(2).  The applicant does not specifically assert that a constitutional violation occurred—just that the trial court lacked jurisdiction to adjudicate his guilt.  It is certainly possible to argue, as the dissent does, that a court that purports to act without jurisdiction violates the due process rights of the individual it purports to act upon.  Dissenting Opinion at 10; *see also Ogle v. State*, 43 Tex. Crim. 219, 231, 63 S.W. 1009, 1012 (1901).  Because the applicant fails to make a prima facie showing of actual innocence, his claim would be barred whether or not we *sua sponte* construed his jurisdictional claim to allege a constitutional violation—as the dissent would have us do.

[15]

Dissenting Opinion at 9 (quoting *Ex parte Seidel*, 39 S.W.3d 221, 224 (Tex. Crim. App. 2001)).

doctrine. Indeed, in *Ex parte Blue*,[16] we essentially held to the contrary. There, a capital habeas applicant argued that, under Section 5(a)(3) of Article 11.071 of the Code of Criminal Procedure,[17] he should be able to interpose a claim of mental retardation in bar of the death penalty in a subsequent post-conviction writ application—even though he had enjoyed every opportunity to raise that claim in his initial post-conviction writ application, but failed to do so.[18] Because execution of the mentally retarded is absolutely barred by the Eighth Amendment, he should be able to claim mental retardation "at any time," including in a subsequent post-conviction writ application, notwithstanding the statutory abuse of the writ doctrine.[19] We rejected this claim, holding that the legislative prerogative to regulate post-conviction habeas corpus procedure was well established and that "at any time" does not include in a subsequent post-conviction writ application that cannot meet the dictates of Article 11.071, Section 5.[20] There is no reason to believe that the same should not be true of Article 11.07, Section 4's abuse of the writ provisions.

The dissent argues that this case is distinguishable from *Blue* because it involves a

---

[16] 230 S.W.3d 151 (Tex. Crim. App. 2007).

[17] Article 11.071 § 5(a)(3).

[18] *Blue*, *supra*, at 154.

[19] *Id*.

[20] *Id*. at 155-56.

claim that the convicting court lacked jurisdiction.[21] It is, of course, axiomatic in our case law that review of jurisdictional claims are cognizable in post-conviction habeas corpus proceedings.[22] Moreover, we have recognized them to be cognizable without regard to ordinary notions of procedural default—essentially because it is simply not optional with the parties to agree to confer subject matter jurisdiction on a convicting court where that jurisdiction is lacking.[23] Therefore, unless and until such time as the Legislature might say otherwise, in exercise of its constitutional authority to regulate post-conviction writ procedure,[24] a meritorious claim of truly jurisdictional dimension will "always" be subject to vindication in an original post-conviction application for writ of habeas corpus. We do not mean here to say otherwise. Had the applicant properly raised his present claim in his original writ, we would not hesitate to reach the merits and, if appropriate, grant relief. But

---

[21] Dissenting opinion at 5-6.

[22] *Ex parte Banks*, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989).

[23] *Cf. Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993) ("Of course, the system also includes a number of requirements and prohibitions which are essentially independent of the litigants' wishes. Implementation of these requirements is not optional and cannot, therefore, be waived or forfeited by the parties. The clearest cases of nonwaivable, nonforfeitable systemic requirements are laws affecting the jurisdiction of the courts."); *Garcia v. Dial*, 596 S.W.2d 524, 527 (Tex. Crim. App. 1980) ("Jurisdiction of the subject matter cannot be conferred by agreement[.]").

[24] *See Ex parte Davis*, 947 S.W.2d 216, 223-24 (Tex. Crim. App. 1996) (McCormick, P.J., concurring, joined by four other members of the Court) (codification of the abuse of the writ doctrine in Article 11.071, Section 5 of the Texas Code of Criminal Procedure constituted a legitimate exercise of the Legislature's authority to "regulate" this Court's post-conviction habeas corpus jurisdiction, as conferred by TEX. CONST. art. V, § 5(c)).

in the context of subsequent post-conviction writ applications, the Legislature *has* validly exercised its constitutionally-endowed regulatory authority to make it clear that only those claims that fit within the statutory exceptions prescribed by Subsections 4(a)(1) and (2) of Article 11.07 are cognizable. Short of overruling *Ex parte Davis*,[25] we are not at liberty talismanically to invoke "jurisdiction" to reach the merits and grant relief in a subsequent writ application.

The dissent seems to take the position that Section 4, *on its face*, does not apply the abuse of the writ doctrine to claims involving jurisdictional defects.[26] First, the dissent argues, because a purported judgment of conviction from a court lacking jurisdiction is a nullity from its inception, there is no final conviction to trigger this Court's authority under Article 11.07 to begin with, and so the abuse of the writ provisions of Section 4(a) do not apply.[27] This argument is untenable. The applicant filed his application for writ of habeas corpus in this cause on the Court's prescribed form for post-conviction applications under Article 11.07, and it plainly challenges the validity of something that at least purports to be a final conviction. It does not attempt in any other fashion to invoke this Court's original habeas corpus jurisdiction under Article V, Section 5 of the Texas Constitution,[28] or any

---

[25] *Id*.

[26] Dissenting Opinion at 6-9.

[27] Dissenting Opinion at 6-7.

[28] TEX. CONST. art. V, § 5(c).

other conceivable process that would remove the cause from the legislative authority to regulate post-conviction habeas corpus proceedings that we identified as controlling in *Davis*. The applicant cannot call upon our general authority to grant appropriate post-conviction habeas corpus relief under Article 11.07, while arguing that he should be insulated from the plain limitations upon subsequent writ applications embodied in Section 4(a).

Second, the dissent asserts that the Legislature could not possibly have intended to prohibit subsequent post-conviction habeas corpus applicants from challenging convictions obtained *sans* jurisdiction because such an intent would be too intolerable to contemplate, and therefore "absurd."[29] It is of course true that we primarily glean legislative intent from the statutory language itself when it is plain, unless application of the plain language "would lead to absurd consequences that the Legislature could not *possibly* have intended."[30] On its face, Section 4(a) plainly does not include jurisdictional claims among the exceptions to the prohibition against granting habeas corpus relief in a subsequent writ application. The dissent does not really contend otherwise, but seems to argue that to effectuate the plain language of Section 4(a) would lead to an absurd—indeed, an irrational—result.[31] But there is nothing irrational about the legislative exercise of its prerogative to draw a definite statutory line beyond which the State's substantial interest in the finality of its judgments

---

[29] Dissenting Opinion at 8-9.

[30] *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

[31] Dissenting Opinion at 9.

overcomes all other policy interests, including the interest of habeas corpus applicants indefinitely to preserve a forum in which to challenge—even on jurisdictional grounds—the validity of their convictions. *Davis* established the legitimacy of that legislative prerogative, and we may not allow our judgment about legislative wisdom to thwart legislative will.

Because the statute plainly admits of no jurisdictional exception, we have no call to resort to extra-textual considerations.[32] The dissent would nevertheless have us presume that, in enacting Section 4(a) of Article 11.07, the Legislature was aware of the evolution of post-conviction habeas corpus jurisprudence, and the burgeoning of cognizability of claims beyond those challenging the jurisdiction of the convicting court to include non-jurisdictional constitutional claims.[33] Aware of this history, the dissent asserts, the Legislature must surely have meant to limit the application of Section 4(a)'s abuse of the writ provisions to only the latter category of claims.[34] The dissent cites no supporting authority for this assertion other than the common presumption that the Legislature "is aware of case law affecting or relating to" its enactments.[35] We reject it. That the Legislature may have been aware of the historical

---

[32]

*See Boykin*, *supra*, at 785.

[33]

Dissenting Opinion at 7 n.5 & 8-9; *see also Ex parte Crispen*, 777 S.W.2d 103, 106-108 (Tex. Crim. App. 1989) (Clinton, J., concurring) (describing the evolution of the scope of habeas cognizability from addressing only jurisdictional claims to also vindicating substantial federal constitutional defects).

[34]

*Id*. at 8-9.

[35]

*Id*. at 8 (citing *Miller v. State*, 33 S.W.3d 257, 260 (Tex. Crim. App. 2000).

expansion of habeas cognizability does not establish that it meant for its codification of the abuse of the writ doctrine to circumscribe that expansion only with respect to non-jurisdictional, constitutionally based claims. Moreover, to the extent that we have looked to legislative history in the past to construe Section 4, we have emphasized the clear legislative intent to provide but "one [full] bite of the apple," with no qualification expressed for habeas claims predicated on jurisdictional, as opposed to merely constitutional, defects.[36] To the contrary, the Legislature meant largely to mimic federal abuse of the writ practice.[37] We note that, in applying the federal abuse of the writ provision applicable to challenges of federal criminal convictions, at least one federal court of appeals has recently held that the federal district court rightly declined to entertain a petitioner's claim in a subsequent federal habeas corpus petition that the convicting court had lacked jurisdiction to convict him.[38]

**The Dissent—Innocence:** Although the applicant makes no argument that his application satisfies Section 4(a)(2) of Article 11.07, the dissenters do. According to the dissent, because the trial judge in this deferred adjudication proceeding had not yet found the applicant guilty, the rational fact-finder posited by Section 4(a)(2) (here, the trial judge) could *not* "have found the applicant guilty" because the trial court had lost jurisdiction to do

---

[36] *Ex parte Torres*, 943 S.W.2d 469, 473-74 (Tex. Crim. App. 1997).

[37] *Id*. at 473; *Blue*, *supra*, at 160 n.40.

[38] *Thompson v. Choinski*, 525 F.3d 205, 208 (2nd Cir. 2008), *cert. denied*, 555 U.S. 1118 (2009).

so.[39] The dissent finds authority for this assertion in *Blue*. In *Blue*, we held that a rational jury "could" not answer capital punishment special issues in the State's favor—"if only for the simple reason that" a finding of mental retardation would, under the Eighth Amendment, obviate the submission of those issues to the jury "in the first place."[40] Here, by contrast, the relevant fact finding is not obviated. The trial court could not have placed the applicant on deferred adjudication community supervision "in the first place" without finding that the State's evidence at least "substantiates the defendant's guilt[.]"[41] Thus, at the time the statutory scheme contemplates that a *finding* of guilt *must* be made (albeit not acted upon in a formal adjudication), the fact-finder clearly "could have found the applicant guilty beyond

---

[39]

Dissenting Opinion at 10-11. The dissent does not address the apparent anomaly that its analysis can apply only in cases of deferred adjudication, never in cases involving regular probation revocation proceedings.

[40]

*Blue*, *supra*, at 161. The applicable provision in *Blue*, subsection 5(a)(3) of Article 11.071, deals with the special issues submitted to the jury in a death penalty case. That subsection reads:

Sec. 5 (a) If a subsequent application for a writ of habeas corpus is filled after filing an initial application a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient facts establishing that:

\* \* \*

(3) by clear and convincing evidence but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071 or 37.0711.

[41]

 Article 42.12 § 5(a).

a reasonable doubt."[42]  Any subsequent proceeding for purposes of deciding whether to proceed to adjudication does not involve a revisitation of the initial guilt-substantiation determination.[43]  The applicant has failed to show that "no rational jury could have found him guilty beyond a reasonable doubt" based upon whatever evidence was originally proffered to substantiate his plea; nor does he identify any new evidence that would somehow cast that original evidence in a new, overwhelmingly exculpatory light.[44]  Under these circumstances the applicant has not satisfied the exception to the abuse of writ doctrine that is embodied in Section 4(a)(2).

**Conclusion:** In Section 4 of Article 11.07, the Legislature has explicitly prescribed the only circumstances in which we may reach the merits of a subsequent post-conviction writ application.  "[I]t is not for the courts to add or subtract" from that enactment.[45]  We have long held that the Legislature is authorized to circumscribe post-conviction habeas

---

[42]

Article 11.07 § 4(a)(2).

[43]

*See* Article 42.12 § 5(b) ("The defendant is entitled to a hearing limited to the determination by the court of whether it proceeds with an adjudication of guilt on the original charge.").  *Cf. Manuel v. State*, 994 S.W.2d 658, 662 (Tex. Crim. App. 1999) (since 1987, the Legislature has provided that defendants may immediately appeal the proceedings at which they were placed on deferred adjudication probation in the first place, and they must now raise issues of the sufficiency of the evidence to substantiate guilt in that immediate appeal, *not* in any later appeal of the decision to proceed to adjudication).

[44]

Article 11.07 § 4(a)(2).

[45]

*Coit v. State*, 808 S.W.2d 473, 475 (Tex. Crim. App.1991) (quoting *Ex parte Davis*, 412 S.W.2d 46, 52 (Tex. Crim. App.1967)).

procedure in precisely this way.[46]  As none of the above statutory exceptions provides an appropriate vehicle to review the merits of the applicant's claim—much less grant relief—under Section 4, this Court has no choice but to dismiss the instant application.

FILED:      January 16, 2013
PUBLISH

---

[46] *Davis*, 947 S.W.2d at 219.  *Cf. Rushing v. State*, 85 S.W.3d 283, 285-86 (Tex. Crim. App. 2002) (the Legislature is empowered to regulate whether a claim of lack of jurisdiction in juvenile court may be raised on direct appeal).