

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-71,844-02

**EX PARTE ERICK ALBERTO ORANDAY-GARCIA, Applicant**

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 1136137 IN THE 209TH DISTRICT COURT
### FROM HARRIS COUNTY

**PRICE, J., delivered the opinion for a unanimous Court.**

### O P I N I O N

This is a subsequent application for writ of habeas corpus brought under the authority

of Article 11.07, Section 4(a)(1) and (b) of the Texas Code of Criminal Procedure.[1]  In 2009,

---

[1]
  TEX. CODE CRIM. PROC. art. 11.07, § 4(a)(1) ("If a subsequent application for writ of habeas corpus is filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that [*inter alia*] . . . the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the . . . legal basis for the claim was unavailable on the date the applicant filed the previous application[.]");  *Id*. at § 4(b) ("For purposes of Subsection (a)(1), a legal basis of a claim is unavailable on or before a date described by Subsection (a)(1) if the legal basis was not recognized by and could not have been reasonably formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of this state on or before that date.").

we denied the applicant's first post-conviction writ application. In his initial application, the applicant alleged, *inter alia*, that his plea of guilty for possession of cocaine was involuntary because trial counsel rendered deficient performance by advising him that conviction for that offense would not result in deportation.[2] The applicant was in fact deported as a result of his offense. Had the applicant understood the effect that the guilty plea would have on his immigration status, he contended, he would not have pled guilty but instead would have insisted on going to trial. The applicant's trial counsel filed an affidavit with the convicting court specifically refuting the applicant's allegations and maintaining that he had informed the applicant that his conviction would result in deportation. Based on the affidavit, the convicting court recommended denying relief, which we did.

In this subsequent writ application, the applicant now relies upon the same facts that fueled his initial writ application. It is no surprise, therefore, that he does not try to justify our review of the merits of his present claim on the basis of newly available *facts*. Instead, he argues that a new legal basis for his claim has arisen since we rejected his initial writ

---

2     The applicant pled guilty to a state jail felony and was sentenced to thirty days in jail pursuant to Section 12.44(a) of the Texas Penal Code, which permits the trial court to assess punishment within the range for a Class A misdemeanor when "such punishment would best serve the ends of justice." TEX. PENAL CODE § 12.44(a). We have routinely entertained such post-conviction applications under Article 11.07. *See*, *e.g.*, *Ex parte Love*, No. WR-79,492-01, 2013 WL 2446511 (Tex. Crim. App. June 5, 2013) (not designated for publication); *Ex parte Davenport-Fritsche*, No. AP-77,013, 2013 WL 1654929 (Tex. Crim. App. Apr. 17, 2013) (not designated for publication); *Ex parte Calderon*, No. AP-77,006, 2013 WL 1232309 (Tex. Crim. App. March 27, 2013) (not designated for publication). The applicant has long since discharged his thirty-day sentence, but he was subsequently deported as a result of this conviction and has therefore suffered a collateral consequence that entitles him to challenge the conviction under Article 11.07, Section 3(c).

application and that this new *law* renders his present claim newly available under Article 11.07, Section 4(a)(1). The applicant argues that the same turn of events that he initially invoked in support of his claim that his plea was rendered involuntary due to the deficient advice of trial counsel will now support a claim under the United States Supreme Court's decision in *Padilla v. Kentucky*.[3] Such a claim is available to him now, he maintains, because, since we denied relief in his initial writ application back in 2009, the Supreme Court has held, in *Padilla,* that when a defendant's immigration consequences are clear, trial counsel has a duty to inform his client of those consequences.[4]

To satisfy Article 11.07, Section 4(a)(1), the applicant must establish not only that a new legal basis for relief exists that was unavailable at the time of his original habeas application, but also that the facts he alleges are at least minimally sufficient to bring him within the ambit of that new legal basis for relief.[5] We have all but held that it is enough to declare a subsequent Article 11.07 habeas application abusive, and therefore subject to dismissal under Section 4, if it fails to make out a prima facie case for relief under the new law that it identifies.[6] We take this opportunity to finish the job.

---

[3] 130 S. Ct. 1473 (2010).

[4] *Id*. at 1482-84.

[5] *Ex parte Chavez*, 371 S.W.3d 200, 220 & n.9 (Tex. Crim. App. 2012) (Price, J., dissenting).

[6] *See Ex parte Brooks*, 219 S.W.3d 396, 400-01 (Tex. Crim. App. 2007) (holding that a subsequent habeas application was abusive under Article 11.07, Section 4(a)(2), because it did not

In *Ex parte Brooks*,[7] we concluded that, before this Court may review a subsequent writ application based on a claim that it is immune from the abuse of the writ doctrine under Article 11.07, Section 4(a)(2),[8] the applicant must make a prima facie showing that he is actually innocent.[9] To justify our conclusion, we relied heavily on our prior decision in a post-conviction writ application in a capital case, *Ex parte Staley*.[10] In *Staley*, we held that, in order to take advantage of the new-law exception to the abuse of the writ doctrine embodied in Article 11.071, Section 5(a)(1) (the functional equivalent of Article 11.07, Section 4(a)(1) for subsequent death penalty writ applications), a subsequent writ applicant

establish a prima facie case for threshold actual innocence). *Cf. Ex parte Campbell*, 226 S.W.3d 418, 421 (Tex. Crim. App. 2007) ("[T]o satisfy Art. 11.071, § 5(a) [the capital analog to Article 11.07, Section 4(a)(1)], 1) the factual or legal basis for an applicant's current claims must have been unavailable as to all of his previous applications, and 2) the specific facts alleged, if established, would constitute a constitutional violation that would likely require relief from either the conviction or sentence.") (footnote omitted); *Ex parte Staley*, 160 S.W.3d 56, 63 (Tex. Crim. App. 2005) (per curiam) ("Under both Article 11.07 and Article 11.071, . . . it is not sufficient to allege that a legal claim was unavailable at the time of the applicant's original filing if the facts alleged in the subsequent application do not bring the constitutional claim under the umbrella of that 'new' legal claim."); George E. Dix & John M. Schmolesky, 43B TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 58:40 at 757 (3d ed. 2011) (to overcome a Section 4 bar against subsequent writ applications, "the application must allege facts that, if true, establish the applicability of [either Section 4(a)(1) or 4(a)(2)]").

[7] 219 S.W.3d 396 (Tex. Crim. App. 2007).

[8] To overcome the procedural bar by way of Section 4(a)(2), "the application [must] contain[] sufficient specific facts establishing that . . . by a preponderance of the evidence, but for a violation of the United State Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt." TEX. CODE CRIM. PROC. art. 11.07, § 4(a)(2).

[9] *Brooks*, *supra*, at 400-01.

[10] 160 S.W.3d 56 (Tex. Crim. App. 2005).

must allege facts sufficient to make out at least a prima facie case for relief under whatever new law he is attempting to invoke.[11] In *Brooks*, we justified our holding in *Staley* as follows:

> To read [Article 11.071, Section 5(a)(1)] otherwise would mean that every time a new law is passed or precedent is set, every inmate could file a subsequent application for writ of habeas corpus, regardless of whether the newly available legal basis applied to his situation, and the court would have to consider the merits. This clearly undermines the purpose of the subsequent-writ provisions.[12]

In order to avoid this anomaly in the non-capital habeas milieu as well, we extended the same implicit requirement of an allegation of facts sufficient to invoke the new law to Article 11.07, Section 4(a)(2):

> Similarly, while the text of section 4(a)(2) does not specifically state that the applicant must make a prima facie claim of actual innocence in addition to the claim of a constitutional violation, it is inherent in the subsequent-writ provisions that the applicant meet the threshold requirement before the merits

---

[11] *Staley*, *supra*, at 63-64. Under Article 11.071, Section 5(a)(1), the applicant must show that the "claims and issues . . . could not have been presented previously . . . because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application[.]" TEX. CODE CRIM. PROC. art. 11.071, § 5(a)(1). In *Staley* we observed hypothetically that a subsequent writ application that invoked *Ring* and *Apprendi* as new law, but failed to allege facts that would substantiate a claim under those Supreme Court opinions, would fail to satisfy Article 11.071, Section 5(a)(1). *Staley*, *supra*, at 63-64 (citing *Ring v. Arizona*, 536 U.S. 584 (2002); *Apprendi v. New Jersey*, 530 U.S. 466 (2000)). We likewise observed that a subsequent writ application invoking *Atkins* but failing to allege facts that would establish mental retardation would similarly fail to satisfy Article 11.071, Section 5(a)(1). *Staley*, *supra*, at 64 (citing *Atkins v. Virginia*, 536 U.S. 304 (2002)). The new law that Staley himself sought to invoke was a trio of cases, but we held that Staley failed to allege facts to bring him within the ambit of the holdings of those cases. *Staley*, *supra*, at 65-66 (citing *Penry v. Johnson*, 532 U.S. 782 (2001); *Tennard v. Dretke*, 542 U.S. 274 (2004); *Smith v. Texas*, 543 U.S. 37 (2004)).

[12] *Brooks*, *supra*, at 400.

of his claim will be considered.[13]

Thus we imported *Staley*'s requirement of an allegation of prima facie facts under Article 11.071, Section 5(a)(1)—the capital-writ new-law abuse-of-the-writ exception—into Article 11.07, Section 4(a)(2)—the non-capital constitutional/innocence abuse-of-the-writ exception. If the prima facie gloss from *Staley* applies to Article 11.07, Section 4(a)(2)—the non-capital constitutional/innocence abuse-of-the-writ exception—then, *a fortiori*, it should apply to Article 11.07, Section 4(a)(1)—the non-capital new-law abuse-of-the-writ exception. After all, Section 4(a)(1) is the direct analog to the capital new-law abuse-of-the-writ exception, namely, Section 5(a)(1), that was at issue in *Staley*.

Applying the requirement of an allegation of prima facie facts to the applicant's pleading today, we dismiss it as non-compliant with Article 11.07, Section 4. The new law that the applicant invokes is *Padilla*, but he cannot possibly establish that *Padilla* applies to the facts of his case because of our decision in *Ex parte De Los Reyes*,[14] and the United States Supreme Court's opinion in *Chaidez v. United States*.[15] In *De Los Reyes*, we held that *Padilla* does not apply retroactively.[16] Because the applicant's conviction was final before

---

[13] *Id*.

[14] 392 S.W.3d 675 (Tex. Crim. App. 2013).

[15] 133 S. Ct. 1103 (2013).

[16] *De Los Reyes*, *supra*, at 679.

the Supreme Court announced the rule in *Padilla*, it cannot apply to him in any event, new

law though it may be.[17]  We therefore dismiss the application.

DELIVERED:      October 9, 2013
PUBLISH

---

[17]  *Id.*